ROBERT P. FRANK, Judge.
James Darrell West (appellant) was convicted in a bench trial of one count of aggravated involuntary manslaughter, in violation of Code § 18.2-36.1, one count of involuntary manslaughter, in violation of Code § 18.2-36, and one count of driving under the influence, in violation of Code § 18.2-266. On appeal, he contends the trial court violated his Fifth Amendment right against double jeopardy by convicting him of both aggravated involuntary manslaughter and involuntary manslaughter. Appellant also contends the evidence was insufficient to convict him of the three charges. For the reasons stated, we affirm his convictions.
BACKGROUND
At about 9:00 p.m. on April 17, 2002, Tasharanda Gainey was driving her car westbound on Interstate 64 in Henrico County, near the interchange with Interstate 295. Gainey’s cruise control was set at 70 miles per hour, and the posted speed limit was 65 miles per hour. An “older model” burgundy car that looked like “some kind of Firebird or Oldsmobile” passed her in the right-hand lane “like [her car] was standing still.” Gainey exclaimed to her passengers that the car had to be “doing at least a hundred.” At trial, Gainey estimated the car’s speed was around 90 miles per hour. Gainey observed the taillights of the red car for ten to fifteen seconds before it *332 disappeared from view. She never saw the car’s brake lights activate.
About fifteen seconds after the red car disappeared, Gainey saw headlights in front of her. She saw a vehicle “twisting” and then “go[ing] up in the air and then in the median.” She stopped her car on the right side of the interstate and got out. Gainey observed a tan pickup truck and went to investigate, but before she neared the truck, Trooper Eric Kingston arrived. Kingston had also observed “two headlights that appeared to tumble into the center median,” so he had called his dispatcher at 9:19 p.m. and stopped to investigate. The driver of the tan pickup, Burlia Gene Jenkins, Jr., died of injuries sustained in the accident.
As the officer walked Gainey back to her car, she saw a burgundy bumper lying in front of her car. They then noticed a burgundy car underneath the overpass for Interstate 295. At trial, Gainey expressed “no doubt” that this car was the same one that had passed her moments earlier. A license plate, still attached to the bumper, matched the remaining license plate on the burgundy vehicle.
The burgundy car proved to be an Oldsmobile with “extensive damage to the front end” and a missing front bumper. The car apparently had run into a support pillar for the overpass. Appellant was the only person in the car, and he was injured. At trial, Kingston explained:
Mr. West was injured and entrapped [sic] in the vehicle, and I detected a strong odor of an alcoholic beverage about his person and began to try and speak to him, but he was very, very groggy, non-coherent, didn’t seem to understand what I was saying to him.
[immediately as I approached the vehicle, I detected a very strong odor of alcohol. The alcoholic beverage odor was coming from his person and the vehicle, being that he was still [sic] in the vehicle, I couldn’t separate the two odors at that time. It wasn’t until fire and rescue had a significant amount of time working on him to free him from the *333 wreckage that he was put onto a stretcher, and at that time, I was still detecting a strong odor of alcoholic beverage about his person.
People at the hospital who treated appellant also testified that he smelled of alcohol that evening.
Kingston estimated the rescue squad spent at least twenty-minutes removing appellant from his vehicle. Before an ambulance took appellant to MCV Hospital in Richmond, Kingston looked to see if any alcoholic beverages were inside the Oldsmobile. Although he discovered nothing at that time, when he examined the car after it was impounded, Kingston found an empty, crushed, twelve-ounce beer can and an empty, broken, 22-ounce beer bottle.
Virginia State Trooper Richard Weyant arrived at the scene at 10:18 p.m. Weyant determined, based on accident debris and markings on the road, that the point of impact was in the right lane of westbound Interstate 64. Most of the damage to appellant’s car was to the left side, while the damage to the decedent’s pickup truck was to its back end. Weyant observed “red paint scrapings all the way to the rear end” of the pickup truck. He concluded the Oldsmobile “forced the back end of the pickup truck up, actually bent the pickup as it more or less submarined up under the pickup truck and struck the rear-end housing.” He indicated he found no skid marks from appellant’s vehicle, although several “yaw marks, tire scuff marks, [and] curb tire marks” resulted from the pickup truck going sideways and flipping.
Paint samples from both vehicles were analyzed. David Toth of the Division of Forensic Science determined that the red paint on the pickup truck came from appellant’s vehicle.
Trooper Weyant also examined the rear light assembly of the pickup truck. He found, “All lights, except the running lights [tail lights, side markers] worked. Turn signals and so forth all worked.” Then, once Weyant replaced the running light fuse, which had blown, “the lights came on except the right side because I’d unplugged them.”
*334 Ann Davis, a forensic scientist, examined the rear lighting assembly of the pickup truck and found “impact shock” on the two lowest running lights, on both the right and left sides of the pickup. She explained how this effect occurs:
[W]hen a lamp is normal, the filament, the coils are evenly spaced and have a certain configuration based on the type of lamp that it is. This type of lamp that we’re looking at is a lamp such as this; the normal configuration would look like that. When that filament is incandescent, it’s a very, very high temperature. And when impact would hit that lamp or near that lamp, the filament, the metal itself is going to stretch and distort.
She concluded these lights were lit “at the time of impact shock,” although she conceded that the accident creating the impact shock could have occurred prior to April 17th.
Several blood samples were drawn from appellant at various times that evening and the next day. A blood serum test concluded at 11:17 p.m. on April 17th found appellant had a blood alcohol level of 1190 milligrams per liter. Julia Pearson, a forensic toxicologist, testified that blood serum “runs 15 percent higher than a whole blood equivalent,” and she calculated that this sample of appellant’s blood reflected a whole blood alcohol level of .10. A second whole blood sample, taken on April 18th, indicated a .059 blood alcohol level. Pearson also testified that, based upon the blood samples and assuming “all the alcohol he drank that night had been fully absorbed from his stomach into his blood system,” appellant’s blood alcohol level would have been approximately .115 at the time of the accident.
Pearson further described the effects of intoxication on an individual:
Alcohol is a central nervous system depressant. The way it acts is once it gets into your brain, it starts to affect various regions of your brain.
^ ^ ^
In general, the behavior can also change in the sense they may start to do things they would not normally do if they *335 were sober due to these changes in their brain. Once the alcohol concentration gets a little bit higher, around the .05, alcohol can start to effect your visual acuity, which means at night your ability of your pupils to respond to headlights and glare is reduced. It can also reduce your reaction time or your ability to respond to an adverse event.
Um, once the alcohol gets higher than a .05, we start to see symptoms of clinical intoxication, where their ability to speak may become a little bit slurred, their motor coordination may be a little bit off, they may have a balance problem.
Once the alcohol gets above a .10, typically, there’s gross symptoms of intoxication where you can clearly see that someone’s been drinking, and your average individual, they may not be able to walk a straight line, may be slurring, stumbling.
Appellant testified he drank a 22-ounce beer shortly before the accident. He also admitted to drinking a twelve-ounce beer at 2:00 p.m. and another at 6:00 p.m. He denied drinking any other alcohol that day. He recalled nothing about the accident.
After the Commonwealth rested, appellant moved to strike the aggravated manslaughter and DUI charges only, based on alleged irregularities in the withdrawal of blood and the toxicology reports. Appellant also argued the evidence was insufficient to show he was driving at an excessive speed.
At the conclusion of all the evidence, appellant made a motion to strike the evidence on all three offenses. He argued no evidence proved that appellant hit the victim’s truck or that he was driving at an excessive speed. He again argued irregularities in the blood testing. Appellant never argued that convicting him of both manslaughter offenses constituted double jeopardy.
In responding to the motion to strike, the Commonwealth’s attorney made the following reference to double jeopardy:
[TJhere is the intoxication evidence, there is the evidence of the gross negligence, so I believe the evidence is sufficient *336 for an aggravated manslaughter. Judge, the laws in Virginia, it is, it’s not double jeopardy for aggravated manslaughter and a DUI. And, unfortunately, and I think it’s, it’s just the way that the law is written, it does not appear that involuntary manslaughter is a lesser included offense of aggravated manslaughter. And for, I guess for appeal reasons, legal reasons, although there probably ought to be a lesser included offense, I think the way the statute is written, it’s not, I would ask that he be convicted of that as well for appeal purposes.
Appellant did not argue with this characterization of Virginia law.
At sentencing, appellant’s attorney argued that the Commonwealth was required to make “an election at some point in time of whether they wanted to go with involuntary or the aggravated manslaughter.” He added, “And I would ask you to reconsider striking the aggravated manslaughter and just go on the involuntary manslaughter.” He did not argue double jeopardy or any other constitutional protections as reasons why the trial court should strike one of the charges.
ANALYSIS
A. Double Jeopardy
The Commonwealth contends appellant did not preserve his double jeopardy argument at trial. Appellant responds that his argument at sentencing preserved the issue under Rule 5A:18. Alternatively, he asks this Court to apply the ends of justice exception to the rule. We find appellant did not preserve his double jeopardy argument, and the ends of justice exception does not apply here.
In order to preserve an issue for appeal, the objection must be “stated together with the grounds therefor at the time of the ruling.” Rule 5A.T8. This rule applies to issues involving constitutional principles. Ashby v. Commonwealth, 33 Va.App. 540, 544-45, 535 S.E.2d 182, 185 (2000) (appellant did not preserve speedy trial issues under either the United *337 States or the Virginia Constitutions, therefore, the Court will not consider them on appeal).
The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. In addition, a specific, contemporaneous objection gives the opposing party the opportunity to meet the objection at that stage of the proceeding.
Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991) (citation omitted).
While appellant did object to the convictions, he did not inform the trial court that he objected on general constitutional or double jeopardy grounds. Instead, he argued that the Commonwealth, for some unstated reason, was required to make an election between involuntary manslaughter and the aggravated offense. “Election” in the context of criminal cases can refer to a requirement that the Commonwealth choose one specific “theory of the crime” under which to proceed, see, e.g., Commonwealth v. Bruhn, 264 Va. 597, 602, 570 S.E.2d 866, 869 (2002), or can refer to the Commonwealth’s decision to indict a defendant for particular crimes, see, e.g., Cardwell v. Commonwealth, 248 Va. 501, 510, 450 S.E.2d 146, 152 (1994). Using the term, “election,” to argue that double jeopardy is violated by convicting appellant of both manslaughter charges, is insufficient to put the trial court on notice of the specific argument that appellant makes on appeal. See Scott v. Commonwealth, 31 Va.App. 461, 464-65, 524 S.E.2d 162, 163-64 (2000) (finding an objection to introduction of statements because they came from codefendants did not preserve an objection to the statements based on unreliable hearsay principles).[1]
*338 As his argument did not inform the trial court that he had a double jeopardy basis for his objection, appellant did not preserve a double jeopardy objection for appeal. See Walton v. Commonwealth, 24 Va.App. 757, 761, 485 S.E.2d 641, 643 (1997) (finding defendant’s objection at trial, that suspension of his driver’s license upon conviction for possession of marijuana violated substantive due process rights, did not preserve for appeal his claim that it violated the Eighth Amendment’s proscription against cruel and unusual punishment).
Although he did not preserve his double jeopardy objection for appeal, appellant argues the ends of justice exception to Rule 5A:18 allows this Court to consider his assignment of error.
Application of the ends of justice exception requires proof of an error that was “clear, substantial and material.” Brown v. Commonwealth, 8 Va.App. 126, 132, 380 S.E.2d 8, 11 (1989). The record “must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred.” Redman v. Commonwealth, 25 Va.App. 215, 221, 487 S.E.2d 269, 272 (1997). Ordinarily, in the criminal context, application of the ends of justice exception is appropriate where “[the accused] was convicted for conduct that was not a criminal offense” or “the record ... affirmatively prove[s] that an element of the offense did not occur.” Id. at 221-22, 487 S.E.2d at 272-73. However, some procedures are so crucial that a court’s failure to adhere to them constitutes error that is clear, substantial and material even in the absence of affirmative proof of error in the result. For example, a trial court in a criminal case has an affirmative duty properly to instruct the jury on the elements of the charged offense, even if the accused does not object or proffer a properly worded jury instruction, and the ends of justice exception permits the accused to raise this issue for the first time on appeal. See Johnson *339 v. Commonwealth, 20 Va.App. 547, 553-54, 458 S.E.2d 599, 602 (1995) (en banc); see also Jimenez v. Commonwealth, 241 Va. 244, 250, 402 S.E.2d 678, 681 (1991).
Herring v. Herring, 33 Va.App. 281, 287, 532 S.E.2d 923, 927 (2000) (emphasis and ellipses in original). Invocation of any exception to Rule 5A:18 is rare. See Jimenez, 241 Va. at 249, 402 S.E.2d at 680.
Appellant does not contend in support of his double jeopardy argument that he was convicted of conduct that is not criminal or that the record affirmatively proves he did not commit one of the offenses. He simply claims the error (assuming it was error) is clear, substantial, and material because he was subjected to double jeopardy. This tautological argument is not sufficient to invoke the ends of justice exception.
Error alone, even a violation of constitutional principles, is not sufficient to warrant application of the ends of justice exception to Rule 5A:18. See Ashby, 33 Va.App. at 544-45, 535 S.E.2d at 185 (explaining that objections based on constitutional principles must be made to the trial court'in order to preserve the issue for appeal). The Virginia appellate courts have held previously that double jeopardy objections must be preserved before they can be considered on appeal. See Hubbard v. Commonwealth, 207 Va. 673, 678, 152 S.E.2d 250, 253 (1967) (finding double jeopardy is “akin” to an affirmative defense and “and if not raised in proper time is deemed to have been waived”); Cardwell v. Commonwealth, 28 Va.App. 563, 566, 507 S.E.2d 625, 627 (1998) (holding a defendant who pleads “guilty without raising a double jeopardy issue ... has waived his right to appeal that issue”). Therefore, assuming, without deciding, that appellant’s right against double jeopardy was violated,[2] that alleged fact does *340 not create an ends of justice situation such that appellant did not have to preserve the issue for appeal.
Appellant also contends, although he may not have preserved a double jeopardy issue, the Commonwealth in its argument at trial presented the issue sufficiently to preserve it for appeal. However, appellant did not respond to the Commonwealth’s comment that “it’s not double jeopardy for aggravated manslaughter and a DUI. And, ... it does not appear that involuntary manslaughter is a lesser included offense of aggravated manslaughter.” (Emphasis added.) Because appellant did not contradict or even respond to this statement, the trial court was never asked to rule on the issue of double jeopardy. Additionally, Rule 5A:18 requires that “the objection” be stated “together with the grounds therefor at the time of the ruling.” Neither the Commonwealth nor appellant objected to any trial court ruling based on double jeopardy grounds. Therefore, the issue is not preserved for appeal.
A. Sufficiency of the Evidence Appellant also contends the evidence was insufficient to convict him of aggravated involuntary manslaughter, involuntary manslaughter, and driving while intoxicated. He specifically argues (1) the certificates of analysis indicating appellant’s blood alcohol level were inadmissible hearsay and, therefore, the evidence was insufficient-to prove his blood alcohol level for a conviction under Code § 18.2-266(i), (2) the evidence did not prove appellant was “under the influence of alcohol” as required by Code §§ 18.2—266(ii) and 18.2-36.1, and (3) the evidence did not prove criminal negligence as required for a conviction of aggravated involuntary manslaughter under Code § 18.2-36.1(B).
1. Certificates of Analysis
This Court did not grant review of appellant’s first contention regarding the certificates of analysis. In fact, the petition that granted appellant leave to appeal specifically denied an appeal based on the trial court’s alleged error in *341 accepting “inadmissible” hearsay. Assignments of error in criminal appeals to this Court are considered for appeal only after the petition has been granted. See Code § 17.1-406. Therefore, we will not address appellant’s first sufficiency argument. See Perez v. Commonwealth, 25 Va.App. 137, 139 n. 2, 486 S.E.2d 578, 579 n. 2 (1997) (noting that where the Court granted a petition for appeal on one issue, yet on brief, appellant raised three issues, “[w]e did not grant appellant an appeal on the additional issues raised in his brief and will not address them”). The evidence was sufficient to convict appellant of driving while intoxicated under Code § 18.2-266(i).
2. Under the Influence
Secondly, appellant argues the evidence was insufficient to prove he was “under the influence of alcohol” as required for a manslaughter conviction under Code § 18.2-36.1.[3] He contends the testimony did not prove appellant appeared affected by alcohol or that his driving was affected by intoxication. We disagree.
Appellant contends this argument applies to both his involuntary manslaughter conviction and the conviction of aggravated manslaughter. However, as the Commonwealth points out, appellant’s involuntary manslaughter conviction was under Code § 18.2-36, not Code § 18.2-36.1(A). Code § 18.2-36 provides a sentence for the common law crime of involuntary manslaughter, whereas § 18.2-36.1(A) delineates particular elements for a statutory crime of involuntary manslaughter, including the proof of violation of Code § 18.2-266(ii), (iii), or (iv). Therefore, his argument as stated is irrelevant to his involuntary manslaughter conviction under Code § 18.2-36. We will address his argument only as it relates to the aggravated conviction under Code § 18.2-36.1(B), which requires proof of the elements in Code § 18.2-36.1(A) and of conduct *342 “so gross, wanton and culpable as to show a reckless disregard for human life.”
When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible from the evidence. See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). “In so doing we must ‘ “discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom.” ’ ” Norman v. Commonwealth, 2 Va.App. 518, 520, 346 S.E.2d 44, 45 (1986) (quoting Parks v. Commonwealth, 221 Va. 492, 498, 270 S.E.2d 755, 759 (1980) (quoting Wright v. Commonwealth, 196 Va. 132, 137, 82 S.E.2d 603, 606 (1954))). “The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.” Martin v. Commonwealth, 4 Va.App. 438, 443, 358 S.E.2d 415, 418 (1987).
The trial court had sufficient evidence to conclude appellant was under the influence of alcohol at the time of the accident. The court had several certificates of analysis indicating appellant was driving with a blood alcohol level of over .08 grams. Under Code § 18.2-269(A)(3), the trial court can presume from that evidence “that the accused was under the influence of alcohol intoxicants at the time of the alleged offense.” See Thurston v. City of Lynchburg, 15 Va.App. 475, 482, 424 S.E.2d 701, 705 (1992). Additionally, the trial court heard testimony that appellant had the “strong smell” of alcohol about him, was “groggy, noncoherent,”[4] was passing other cars while driving at twenty-five miles per hour over the speed limit, and ran into another car on the interstate. Appel *343 lant admitted he quickly drank a 22-ounce bottle of beer before getting into his ear. Expert testimony explained the adverse effects that alcohol has on the brain and on physical responses. This evidence was sufficient for the court to find appellant was under the influence of alcohol when he caused the death of Jenkins.
3. Criminal Negligence
Finally, appellant argues the evidence was insufficient to prove his conduct was “so gross, wanton and culpable as to show a reckless disregard for human life,” Code § 18.2-36.1(B), and convict him of aggravated involuntary manslaughter. This element of the crime of aggravated involuntary manslaughter has been labeled “criminal negligence.” Goodman v. Commonwealth, 37 Va.App. 374, 387, 558 S.E.2d 555, 562 (2002). To prove that appellant’s actions exhibited a reckless disregard for life, the Commonwealth presented evidence that “the conduct of the driver constitutes a great departure from that of a reasonable person (gross, wanton or willful conduct) which creates a great risk of injury to others and where by the application of an objective standard the accused should have realized the risk created by his conduct.” Keech v. Commonwealth, 9 Va.App. 272, 280, 386 S.E.2d 813, 817 (1989). See also Cottee v. Commonwealth, 31 Va.App. 398, 400, 524 S.E.2d 132, 133 (2000). The evidence here was sufficient to prove appellant’s actions constituted “a great risk” to the lives of others.[5]
Appellant, by his own admission, drank almost twenty-two ounces of beer before getting into his car to drive. According to credible testimony, he then drove, at night, at least twenty-five miles over the posted speed limit in the right-hand lane of the interstate, close to a major intersection where the exit is to the right. By statute, the speed at which he drove is reckless driving. Code § 46.2-862. The evidence further proved the truck had its taillights on, yet appellant did not *344 engage Ms brakes in order to avoid Mtting the vehicle. He Mt the truck with such force that it flipped over and landed in the median of the interstate. After the accident, appellant appeared mtoxicated, and both the analyses of his blood and the testimony of an expert witness indicated that he was intoxicated to the pomt that his thinking and motor skills were affected. The trial court did not err in concluding that, by driving in this condition, at an excessive speed and without paying attention to other vehicles on the road, appellant’s actions constituted behavior so gross, wanton and culpable as to show a reckless disregard for human life.
CONCLUSION
We find the trial court did not err in convicting appellant of driving under the influence, mvoluntary manslaughter, and aggravated involuntary manslaughter. We affirm those convictions.

Affirmed.

. In this case, a specific double jeopardy argument was especially important, as to resolve this issue as it relates to Code § 18.2-36.1, the court must interpret the intent of the legislature as evidenced in Code § 18.2-36.1(C), which states, "The provisions of this section shall not preclude prosecution under any other homicide statute.” However, as appellant did not present a double jeopardy argument to the trial court, this aspect of a ruling on double jeopardy was never discussed. See *338 Dalo v. Commonwealth, 37 Va.App. 156, 163-64, 554 S.E.2d 705, 708-09 (2001) (explaining the importance of legislative intent in double jeopardy arguments).

. Appellant argues he cannot be convicted and sentenced twice when the incident involved only one victim. We note that the Supreme Court of Virginia has held that a defendant can be convicted of two capital murders where only one person was killed. Payne v. Commonwealth, 257 Va. 216, 228, 509 S.E.2d 293, 301 (1999).

. Appellant argues the evidence was insufficient to convict him of drunk driving, whether under Code § 18.2-266(i) or (ii). As we find the evidence was sufficient to convict him under (i), we need not further address whether the evidence was sufficient to convict of driving while intoxicated under Code § 18.2—266(ii).

. Appellant suggests a head injury during the accident made him appear intoxicated. However, the trial court was not required to credit that testimony. See Marable v. Commonwealth, 27 Va.App. 505, 509-10, 500 S.E.2d 233, 235 (1998).

. Appellant does not argue he had no reason to believe his behavior would endanger others. Therefore, we address only whether his behavior created a significant risk.