COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Kelsey and Haley
Argued at Chesapeake, Virginia


KAREN LYNN DASEY

MEMORANDUM OPINION* BY
v.        Record No. 2222-04-1                    JUDGE JAMES W. HALEY, JR.
                                                  NOVEMBER 15, 2005

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Thomas S. Shadrick, Judge

J. Barry McCracken for appellant.

Virginia B. Theisen, Assistant Attorney General (Judith Williams
Jadgmann, Attorney General, on brief), for appellee.


Karen Lynn Dasey challenges the sufficiency of the evidence from her conviction of

prescription fraud under Code § 18.2-258.1(A).  She also asserts that the trial court improperly

intimidated defense witnesses and discouraged their testimony in violation of her Sixth Amendment

right to call witnesses.  Finding each contention lacks merit, we affirm.

I.

"On appeal, 'we review the evidence in the light most favorable to the Commonwealth,

granting to it all reasonable inferences fairly deducible therefrom.'"  Peake v. Commonwealth,

46 Va. App. 35, 37, 614 S.E.2d 672, 674 (2005) (quoting Archer v. Commonwealth,  26

Va. App. 1, 11, 492 S.E.2d 826, 831 (1997) (citation omitted)).

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

On June 6, 2003, Walgreens' pharmacist Stephen Michael Borza received a prescription order from the office of Dr. Greg Warth for a patient named Marilyn Anderson. The next evening, an individual visited the Walgreens and attempted to pick up the prescription through the store's drive-thru. Borza, doubting the validity of the prescription, spoke with the driver of the vehicle through the drive-thru intercom system. As the vehicle began to pull away, Borza recorded the license plate number, which he later relayed to Detective McAndrews of the Virginia Beach Police Department. At trial, Borza identified the driver of the vehicle as the defendant, Mrs. Dasey, stating that he was eighty-five percent sure it was her.

Detective McAndrews was assigned to the diversion investigational pharmaceutical fraud division of special investigations at the time of the incident. After receiving a telephone call and the license plate number from Mr. Borza, Detective McAndrews traced the license number to Mark and Karen Dasey. Detective McAndrews thereafter went to the Dasey house to speak with Mrs. Dasey. Upon arrival, Detective McAndrews identified a Jeep Cherokee Laredo with license plates matching the number given by Borza.

Detective McAndrews testified that Mrs. Dasey gave several different explanations for her whereabouts the evening of June 7th before claiming that a lady named Theresa Smiley had called in the prescription and told Mrs. Dasey to use the name Marilyn Anderson when picking up the prescription. McAndrews testified:

> And I asked [Mrs. Dasey] if she was pretty much was aware that
> . . . she knew that Theresa Smiley committed prescription fraud.
> And she indicated, yes. I said, You were pretty sure the
> prescription wasn't authorized? And she said, Yes. She knew it
> wasn't authorized - - a valid prescription.

Detective McAndrews also testified that the prescription was picked up using an incorrect birth date, a date which was off by one digit in the month and year of appellant's own birth date.

McAndrews testified, "Dates of birth are always off by one number here and there in cases we work. It's very common."

At the close of the Commonwealth's evidence, Mrs. Dasey called two designated alibi witnesses. The first alibi witness was Mark Dasey, the defendant's husband. Before his testimony, the trial judge stated,

> Now sir, before you start to testify I want to advise you of something. And that is this, that your testimony I've been advised is an alibi testimony, which would be crucial to this case. So it goes to the heart of the matter, which means you are subject to the laws of perjury. You've already had a police officer testify as to what your wife told the police officer. You've already had the pharmacist positively identify your wife as being the one that was there. Now, should it be proven that you testify falsely today, that's punishable by a lengthy sentence in the penitentiary. So I want to put you on notice of that right off the bat. It's one thing for her to - - I know that a conviction for her has serious ramifications for her job or whatever. It's another thing to go to the penitentiary for perjury. So having been advised, go ahead.

After being asked by counsel if he still wanted to testify, Mr. Dasey responded "No" and was dismissed.

Anne Dasey, sister-in-law and best friend of the defendant, testified next. The trial judge repeated his perjury warning, after which Anne Dasey responded that she still wanted to testify. Anne Dasey testified that the defendant accompanied her to North Carolina the evening of June 6th and returned to Virginia around 9:00 p.m. on June 7th. After her testimony, the judge stated:

> I've been a judge fifteen years, and I'm a pretty good judge of who's telling the truth and who's not telling the truth. And I perceive you're not telling the truth. Now, do you want to stick to that story? Because you're going - - you're subject to being prosecuted. . . . Do you want to stick to your story?

Anne Dasey responded, "Never mind. . . . I don't want to [stick to my story]. . . . I don't know [the truth]. I wasn't there." Anne Dasey responded that she never went to North Carolina with the defendant.

Mrs. Dasey's counsel did not object at any time during the judge's exchange with Mark or Anne Dasey. After Anne Dasey was dismissed, the judge asked counsel, "Now does your client want to dig a deeper hole here because I'm the judge that's going to sentence her." The defense thereafter rested on its prior motion to strike.

III.

Appellant challenges the sufficiency of the evidence. We note, "'[t]he judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict, and will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" McCary v. Commonwealth, 42 Va. App. 119, 125, 590 S.E.2d 110, 113 (2003) (quoting Beck v. Commonwealth, 2 Va. App. 170, 172, 342 S.E.2d 642, 643 (1986)). Also, "the credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." Sandoval v. Commonwealth, 20 Va. App. 133, 138, 455 S.E.2d 730, 732 (1995).

Code § 18.2-258.1(A) outlines the elements of a conviction for prescription fraud. That section reads,

> It shall be unlawful for any person to obtain or attempt to obtain any drug or procure or attempt to procure the administration of any controlled substance or marijuana: (i) by fraud, deceit, misrepresentation, embezzlement, or subterfuge; or (ii) by the forgery or alteration of a prescription or of any written order; or (iii) by the concealment of a material fact; or (iv) by the use of a false name or the giving of a false address.

The pharmacist, Mr. Borza, identified Mrs. Dasey, with eighty-five percent certainty, in her attempt to pick up a prescription using a false name. Detective McAndrews testified that Mrs. Dasey admitted to attempting to pick up a prescription Dasey knew was not valid, and thus, sought by "fraud . . . [or] misrepresentation" under the relevant statute. The evidence shows that the prescription was called in giving a date of birth off by one digit as to month and year from

- 4 -

that of appellant's own, but in the name of Marilyn Anderson. The statute further prohibits prescription fraud by use of "a false name." Additionally, the two defense witnesses either refused to testify or recanted their testimony after being given a warning by the judge about the consequences of false testimony.

Additionally, the trial court held: "And let me say first on the record that there is absolutely no doubt whatsoever in my mind that this defendant attempted to obtain a fraudulent prescription." The evidence is sufficient for the court to reach the quoted conclusion.

IV.

Appellant asserts that the trial court improperly intimidated her witnesses, thereby denying her the Sixth Amendment right to present witnesses on one's behalf. Appellant concedes that she did not present this objection to the trial court. "The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998); Rule 5A:18.

Despite the lack of an objection to the trial court, appellant asserts that the ends of justice exception contained in Rule 5A:18 allows this Court to consider this issue on appeal. We disagree.

This Court has recently reiterated the requirements and reasoning of the ends of justice exception to Rule 5A:18. In West v. Commonwealth, 43 Va. App. 327, 597 S.E.2d 274 (2004), this Court held:

> Application of the ends of justice exception requires proof of an error that was "clear, substantial and material." The record "must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage might have occurred." Ordinarily, in the criminal context, application of the ends of justice exception is appropriate where "[the accused] was convicted for conduct that was not a criminal offense" or "the record . . . affirmatively proves that an element of the offense did not occur." . . . Invocation of any exception to Rule 5A:18 is rare.

Id. at 338-39, 597 S.E.2d at 279 (citations omitted).  Additionally, the Virginia Supreme Court has held, "Invoking the ends of justice exception . . . requires a determination not only that there was error in the judgment of the trial court but also that application of the exception is necessary to avoid a grave injustice."  Charles v. Commonwealth, 270 Va. 14, 20, 613 S.E.2d 432, 434 (2005).

Even if the judge erred in warning the defense witnesses and appellant of the consequences of false testimony, that error does not rise to the level necessary to invoke the ends of justice exception.  "Error alone, even a violation of constitutional principles, is not sufficient to warrant application of the ends of justice exception to Rule 5A:18."  West, 43 Va. App. at 339, 597 S.E.2d at 280.  We find no proof of a "clear, substantial and material" error in the record which created a grave injustice.

The evidence overwhelmingly proved appellant's guilt.  In her statement to police, she placed herself at the pharmacy, as did other witnesses.  Thus, any alibi testimony would be rejected by the fact finder, as was clearly stated by the court.

Thus, while we do not condone the remarks of the trial judge which certainly chilled appellant's right to produce evidence on her behalf, this Court cannot consider this issue on appeal, as it was not preserved in the trial court and is not subject to the ends of justice exception.

V.

For the foregoing reasons, we affirm.

Affirmed.