COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judges Beales and White
Argued at Richmond, Virginia


MICHAEL ANTHONY BAUBLITZ

                                                              MEMORANDUM OPINION* BY
v.        Record No. 0838-21-2                     JUDGE RANDOLPH A. BEALES
                                                              SEPTEMBER 20, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
R. Michael McKenney, Judge

Michael L. Donner, Sr. (Setliff Law, P.C., on briefs), for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


The Circuit Court of Lancaster County convicted Michael Anthony Baublitz ("Baublitz") of

unlawfully shooting at an occupied building.  On appeal, Baublitz argues that the trial court erred by

convicting him as a principal in the second degree because it did not convict his co-defendant and

brother, Christopher Baublitz, as a principal in the first degree.  He also argues that the evidence

was insufficient to demonstrate that he acted as a principal in the second degree.

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, [as] the prevailing party at trial." *Gerald v.*

*Commonwealth*, 295 Va. 469, 472 (2018) (quoting *Scott v. Commonwealth*, 292 Va. 380, 381

(2016)).  Sometime before 7:00 a.m. on November 14, 2019, Baublitz and his brother parked

separate vehicles on Telece Green's property in Lancaster County.  Green told the brothers that they

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

could park on his land, and he saw both men carry firearms as they walked toward a field owned by the Tides Inn. A few moments later, Green heard three gunshots. Green testified that he then soon heard the sound of the brothers' vehicles starting and that Baublitz and his brother "left right away" after the gunshots.

Diedra Dunnaway lived in a house across a large field from Green's property. Around 6:45 a.m., Dunnaway stated that she had heard a gunshot and testified that "it hit my house so hard until my windows vibrated." Dunnaway ran to check on her son in the living room, where she saw that her glass storm door had been shattered and there was a hole in her front door. Dunnaway called 911. Dunnaway said that she then heard two additional shots fired after the shot that had hit her house, but only one of the three shots had actually hit her house. Dunnaway took photos of the hole in the door that were introduced into evidence at Baublitz's trial.

Lancaster County Deputy Sheriff Anne Phelps drove to Dunnaway's house and removed a metal projectile that was lodged in her front door. Phelps gave the projectile to Department of Wildlife Resources Officer Tyler Bumgardner, who recognized it as a .50 caliber muzzle-loaded bullet. Bumgardner testified that he went to Green's house, and Green told him that he had heard three shots fired that day. After speaking with Green, Bumgardner testified that he considered Baublitz and his brother as the suspects.

Deputy Sheriff Phelps, Officer Bumgardner, and Officer Kramer searched the field and woods across the street from Dunnaway's house using a police dog trained to detect gunpowder from recently fired firearms. Bumgardner testified that he found two hunting blinds in that area. He also found an orange scent bomb used to attract deer to a location, three "gas check seals,"[1] and

---

[1] Bumgardner testified that a "gas check seal" ensures sufficient pressure builds inside the barrel of a muzzle-loaded firearm to force the projectile "out of the barrel." And that a "gas check seal" travels out of the barrel in the direction of the projectile, but not as far.

fresh footprints in the mud that were still wet. The dog alerted to freshly fired gunpowder odor on the gas check seals.

After searching the field and woods, Officers Bumgardner and Kramer drove to Baublitz's home with the police dog. Officer Bumgardner testified that Baublitz told them that he had been hunting with his brother earlier that morning and had shot at a deer with his crossbow. However, when Officer Kramer told Baublitz that the dog would alert to the presence of any recently fired gunpower, Baublitz informed the officers that he had actually been hunting with a firearm instead. Baublitz led the officers to his attic, where he had hidden a still-loaded .50 caliber muzzleloader rifle under some insulation. Baublitz also showed the officers the ammunition he used, which Bumgardner described as having a similar "size, shape, color, and description" to the projectile removed from Dunnaway's door (and the gas check seals found in the field). Officer Bumgardner testified that Michael Baublitz told him (and later wrote in a written statement) that his brother Christopher Baublitz had shot at—but missed—a deer that morning. Appellant Michael Baublitz also wrote in his statement that "someone else took a shot at" the deer and that twenty minutes later Baublitz himself took a shot at a deer.

After speaking with appellant Michael Baublitz, Officers Bumgardner and Kramer went to see Christopher Baublitz at his home. Bumgardner testified that Christopher Baublitz stated that he had been hunting with his brother Michael Baublitz (after parking on Green's property that morning) and had used a .50 caliber muzzleloader. Christopher Baublitz produced both a .50 caliber muzzleloader and a document purportedly signed by the Tides Inn manager, Stuart Barwise, giving Christopher permission to hunt on its property. By the time of trial, Barwise had died, but Susan Williamson, the director of rooms at the Tides Inn, testified that she had co-signed hundreds of documents with Barwise over the years and that the signature on brother Christopher Baublitz's document was actually not Barwise's signature.

- 3 -

Officer Bumgardner testified that a projectile fired from "an average .50 caliber muzzleloader" would drop "five to seven feet" after moving in the air 400 yards—the approximate distance from the location from which the shot was fired to Dunnaway's front door. Bumgardner submitted Baublitz's and his brother's muzzleloaders and the projectile recovered from Dunnaway's door to the Virginia Department of Forensic Science. Forensic analysis revealed that the projectile was consistent with the brothers' firearms and had similar characteristics as would be produced if it had been shot through either of the firearms. Therefore, the report could not conclusively determine which firearm shot the bullet that went into Dunnaway's door.

After the close of all the evidence,[2] the trial court found that "Michael Baublitz has zero credibility. Didn't tell the truth, evidently, he couldn't tell the truth. Finally consents, feels some guilt about what goes on, and gives up the gun." The trial court then determined "beyond a reasonable doubt the only two people shooting in the vicinity of Ms. Dunnaway's home were Michael Baublitz and Christopher Baublitz." The trial court, despite its inability to determine which of the two Baublitz brothers fired the shot that actually hit Ms. Dunnaway's front door "without having to speculate," found that each brother acted "as a principal in the second degree to the other's conduct." Accordingly, the trial court convicted both Baublitz and his brother Christopher Baublitz of unlawfully shooting at an occupied building.

Michael Baublitz now appeals his conviction to this Court.

ANALYSIS

In his first assignment of error, Baublitz argues that the trial court "erred in convicting Michael Baublitz of violating Va. Code § 18.2-279 as a principal in the second degree under Indictment CR20-125." In his second assignment of error, Baublitz contends that the trial court erred in convicting him "because the Circuit Court had to, yet failed to, find first that

_____

[2] The trial court tried the brothers as co-defendants in a joint trial.

- 4 -

co-defendant Christopher Baublitz was a principal in the first degree of the underlying substantive offense before convicting Michael Baublitz as a principal in the second degree." In his third assignment of error, Baublitz argues that the trial court erred in convicting him "because the evidence was insufficient as a matter of law for the Circuit Court to find that Michael Baublitz was present, aiding, and abetting, any crime committed by any principle [sic] in the first degree."

However, Baublitz concedes in his opening brief that his "counsel did not make any argument to the Circuit Court that encompasses the errors assigned here." At his trial, Baublitz did not move to strike at the conclusion of the evidence. After the trial court convicted Baublitz, he did not move to set aside the verdict or otherwise challenge the evidence. On appeal, Baublitz instead "is asking the Court to consider the ends-of-justice exception to the contemporaneous objection rule to consider this appeal."[3]

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "Rule 5A:18 requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)).

"The 'ends-of-justice' exception to Rule 5A:18 is 'narrow and is to be used sparingly.'" *Melick v. Commonwealth*, 69 Va. App. 122, 146 (2018) (quoting *Pearce v. Commonwealth*, 53

---

[3] Baublitz also conceded at oral argument before this Court that his three assignments of error were not preserved in the trial court. This Court appreciates the candor of Baublitz's counsel in stating that all of the assignments of error are not preserved as "[s]uch candor by counsel embodies the ethical duties expected of a legal advocate and is held in high esteem." *Nimety v. Commonwealth*, 66 Va. App. 432, 436 n.3 (2016).

Va. App. 113, 123 (2008)). "In order to avail oneself of the exception, a defendant must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Redman v. Commonwealth*, 25 Va. App. 215, 221 (1997) (emphasis in original).

"[W]hen an appellant raises a sufficiency of the evidence argument for the first time on appeal, the standard is higher than whether the evidence was insufficient." *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009). This Court "cannot consider the merits of every improperly preserved sufficiency of the evidence appeal unless there is some reason beyond mere insufficiency that invokes the ends-of-justice exception." *Id.* "Any other rule would obliterate our rules requiring a motion to strike." *Id.* Therefore, "[i]n order to show that a miscarriage of justice *has* occurred, thereby invoking the ends-of-justice exception, the appellant must demonstrate that he or she was convicted for conduct that was not a criminal offense or the record must affirmatively prove that an element of the offense did not occur." *Redman*, 25 Va. App. at 221-22 (emphasis in original).

Here, Baublitz has not demonstrated that he was "convicted for conduct that was not a criminal offense" and the record does not "affirmatively prove that an element of the offense did not occur." *Id.* at 222. Baublitz was convicted under Code § 18.2-279, which states in pertinent part,"[i]f any person" "unlawfully" "shoots at . . . or against any dwelling house or other building when occupied," he "is guilty of a Class 6 felony."

> [T]o sustain a conviction under Code § 18.2-279, the Commonwealth need not prove that the defendant had the specific intent to shoot at or against a particular building. Rather, the evidence need only show that a defendant who unlawfully discharges a firearm knew or should have known that an occupied building or buildings were in his line of fire."

*Ellis v. Commonwealth*, 281 Va. 499, 506 (2011). The Supreme Court has defined a principal in the second degree as follows:

> A principal in the second degree, or an aider or abettor as he is sometimes termed, is one who is present, actually or constructively, assisting the perpetrator in the commission of the crime. In order to make a person a principal in the second degree actual participation in the commission of the crime is not necessary. The test is whether or not he was encouraging, inciting, or in some manner offering aid in the commission of the crime. If he was present lending countenance, or otherwise aiding while another did the act, he is an aider and abettor or principal in the second degree.

*Thomas v. Commonwealth*, 279 Va. 131, 156 (2010) (quoting *Muhammad v. Commonwealth*, 269 Va. 451, 482 (2005)). While required under an ends-of-justice analysis, the record in this case certainly does not affirmatively show that Baublitz was convicted of conduct that was *not* a criminal offense because violating Code § 18.2-279 as a principal in the second degree is indeed a criminal offense. *See Fleming v. Commonwealth*, 13 Va. App. 349, 350 (1991) (upholding the appellant's conviction "as a principal in the second degree for unlawfully shooting a firearm at an occupied dwelling, in violation of Code § 18.2-279").

In addition, the record on appeal before us certainly does not affirmatively show that an element of the offense did not occur. The evidence demonstrates that (1) Baublitz had a loaded .50 caliber rifle that he had recently fired, that (2) a .50 caliber bullet was found lodged in the front door of Dunnaway's house, which was only about four hundred yards away from where Baublitz said he had actually just fired his gun, that (3) the brothers reportedly left right away after the last shot was fired, that (4) Baublitz originally said that he only used a crossbow in deer hunting that morning but soon changed his story and admitted to the police that he had used and fired his rifle (after learning that a police dog that was present at his house would alert on a recently fired firearm), and that (5) Baublitz then took police to his attic where he had hidden the still-loaded firearm behind some insulation—after having quickly returned home after he and his brother had fired shots while apparently trespassing on the field owned by the Tides Inn. While the trial court did not determine who fired the actual shot that hit Dunnaway's front door,

Baublitz admitted that both he and his brother fired their guns once while on the Tides Inn property. Consequently, the record does not affirmatively prove that an element of the crime of unlawfully shooting at an occupied building is missing here. *See Redman*, 25 Va. App. at 222.

Furthermore, the trial court's finding that the evidence failed to prove which of the Baublitz brothers was the one who fired the shot that hit Dunnaway's door does not affirmatively prove that an element of the offense did not occur—or that Baublitz was convicted for conduct that was not a criminal offense. The record certainly demonstrates that both Baublitz and his brother fired a bullet from their rifles, and one of those bullets hit the front door of Dunnaway's home. Therefore, the record before us on appeal supports the trial court's finding that Michael Baublitz was indeed a principal in the second degree, and consequently, supports the trial court's conviction of Baublitz for violating Code § 18.2-279 as a principal in the second degree—and likewise supports that he could still be punished as if he were a principal in the first degree. Code § 18.2-18 ("In the case of every felony, every principal in the second degree . . . may be indicted, tried, convicted and punished in all respects as if a principal in the first degree."). In short, the evidence does not demonstrate that Baublitz was convicted of something that was simply not a criminal offense—or that an element of the crime of which he was convicted was missing. *See Harrison and Pollard v. Commonwealth*, 210 Va. 168, 172 (1969) ("the evidence was sufficient to establish that Harrison either committed the robbery himself or acted in concert with Pollard in its commission, and hence was sufficient to support the verdict of the jury"); *see also Fitzgerald v. Commonwealth*, 227 Va. 171, 175 (1984) ("[I]t is immaterial whether Fitzgerald actually cashed the checks, or whether they were forged by one person, endorsed by Fitzgerald, and cashed by the forger or by a third person. Fitzgerald's participation in the concerted action, and his fraudulent intent, are sufficiently supported by the evidence and we will, accordingly, affirm the convictions.").

For these reasons, this Court cannot invoke the ends-of-justice exception to Rule 5A:18 for any of Baublitz's assignments of error—all of which he concedes are unpreserved—because he has failed to meet his burden of demonstrating that an actual miscarriage of justice has occurred, as required under an analysis using the ends-of-justice exception. *See Brittle*, 54 Va. App. at 517-18 ("This burden is nothing more than a common sense obligation on the part of the appellant to point us to a particular place in the record that establishes his innocence; that is, that he was convicted of a non-offense or that the record affirmatively establishes that an element of the offense did not occur. Unless the appellant can point to such a place in the record, we are left with no alternative other than to say that there was no miscarriage of justice."). To do otherwise would eviscerate this Rule of the Supreme Court that requires that an appellant's argument on appeal must be raised before the trial court—and not just be raised for the first time on appeal.

## CONCLUSION

For all of the foregoing reasons, this Court affirms the decision of the trial court.

*Affirmed.*