UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Beales, Malveaux and Causey
Argued at Salem, Virginia

ASA JEREMIAH HOGUE

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1259-21-3              JUDGE MARY BENNETT MALVEAUX
                                                    NOVEMBER 1, 2022
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

M. Paul Valois (James River Legal Associates, on brief), for
appellant.

Liam A. Curry, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief) for appellee.


Asa Jeremiah Hogue ("appellant") was convicted in a jury trial of voluntary manslaughter,

in violation of Code § 18.2-35, and possession of a firearm by a convicted felon, in violation of

Code § 18.2-308.2.[1]  On appeal, he argues that the trial court erred by denying his motion to set

aside the sentencing verdict and imposing the jury's recommended sentence because the jury was

swayed by:  (1) improper and prejudicial testimony by the victim's father and (2) the

Commonwealth's improper closing argument that called for him to be punished for uncharged

conduct.  For the following reasons, we affirm the trial court's judgment.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The jury also convicted appellant of use of a firearm in the commission of a felony, but
the trial court granted appellant's motion to set aside that verdict.

## I. BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In doing so, we discard any of appellant's conflicting evidence and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence.  *Gerald*, 295 Va. at 473.

On August 29, 2018, Alexis Pennix and Tyler Harris visited appellant's basement apartment.  Harris and appellant were friends and had been distributing cocaine and marijuana.  When Harris and Pennix arrived at the apartment, Pennix remained in the car while Harris walked inside.  As Pennix waited, there was a sudden commotion and she heard someone say, "whoa, whoa, whoa."  After hearing a gunshot, Pennix got out of the car to find Harris; she found him on the ground with appellant standing over him.  Appellant ignored Pennix's pleas, shot Harris, and fled on foot.  Harris later died from blood loss caused by two gunshot wounds.  Police found two bags of cocaine, one of which contained eleven individual packages of the drug, on the ground near the scene of the shooting.  Expert testimony on drug distribution, given without objection, established that the packaging of the cocaine was "indicative to distribution of narcotics."

At trial, appellant, who had been convicted of a prior felony drug offense, admitted that he had shot Harris.  He also stated that he regularly sold "[p]owder cocaine, crack, [and] weed."  Although appellant previously had sold drugs to Harris, those transactions had caused stress in their friendship.  Appellant admitted that the cocaine found at the scene "could have been" his and estimated that it was worth hundreds of dollars.  After the close of the evidence and argument by counsel, the jury returned guilty verdicts for voluntary manslaughter and possession of a firearm by a convicted felon.

During the sentencing phase of appellant's trial, Harris's father, Jay Harris, described the anguish and trauma of losing his son. Harris had been raised "in a great neighborhood," but appellant had "influenced" him to become involved in selling cocaine. Jay recounted that despite Pennix's pleas, appellant shot Harris as he lay "on the ground," helpless. Jay implored the jury to impose "every day possible . . . because you don't want this man with this mentality out in your community." Jay characterized appellant as someone who "destroys communities" through gun violence and "the poison that he serves." Jay lamented that appellant should not be in the community "because of the occupation that he chooses to take up, . . . an occupation of killing people, of destroying people, destroying people's lives, [and] destroying people's community." Appellant did not object during Jay's testimony.

During sentencing argument before the jury, the Commonwealth highlighted the trauma appellant's actions had caused for "so many people," including Jay and Pennix. Noting appellant's "choice to sell drugs," even after serving a penitentiary sentence for prior drug distribution, the Commonwealth argued that he was not "naïve about life on the streets." The Commonwealth concluded that the consequence of appellant's choices—Harris's death—was irreversible and asked the jury to sentence appellant to ten years' incarceration for the voluntary manslaughter conviction and five years' incarceration for the possession of a firearm conviction. Appellant did not object to the Commonwealth's sentencing argument.

The jury fixed appellant's sentence at ten years' incarceration for the voluntary manslaughter conviction and five years' incarceration for the possession of a firearm conviction. The trial court convicted appellant and continued the case for sentencing.

At the sentencing hearing, appellant asked the trial court to suspend a portion of the jury's recommended sentence and impose an active term within the discretionary sentencing guidelines

range.[2]  Appellant argued that Jay's "very passionate testimony" improperly asked the jury to give appellant "every day they could" because appellant had given Harris drugs and was "selling poison on the streets."  Appellant also argued that the Commonwealth improperly asked the jury to punish appellant "for . . . selling drugs" even though he had not been charged with any drug offense.

After argument by counsel, the trial court ruled that it would not substitute its judgment for the judgment of the jury and there was no "justification" for reducing the recommended sentence.  Accordingly, the trial court imposed a total of fifteen years of active incarceration.  Appellant subsequently moved the trial court to set aside the jury's "punishment verdict" because Jay's "passionate[]" testimony was "prejudicial" and the Commonwealth's "improper" argument encouraged the jury to sentence him "for conduct for which he was not charged."  The trial court denied the motion.  This appeal followed.

## II.  ANALYSIS

### A.  Motion to Set Aside the Sentencing Verdict

In his first two assignments of error, appellant argues that the trial court erred by refusing to set aside the jury's sentencing verdict because Jay's "prejudicial" sentencing testimony appealed to emotion, not reason, and the Commonwealth advanced an improper closing sentencing argument that invited the jury to punish him for his involvement in drug distribution.  According to appellant, those errors improperly "swayed the jury to recommend the maximum punishment" for each offense and required a new sentencing hearing.

We do not reach the merits of appellant's arguments because Rule 5A:18 bars our consideration of them.[3]  *See* Rule 5A:18 (providing, in pertinent part, that "[n]o ruling of the trial

---

[2] The sentencing guidelines recommended a sentence between three years and seven months of incarceration and eight years and eight months of incarceration.

[3] In its brief to this Court, the Commonwealth noted appellant's failure to object to either Jay's testimony or the Commonwealth's closing argument, and contended that all four of

court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice"). The Rule "requires a litigant to make timely and specific objections, so that the trial court has 'an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals.'" *Brown v. Commonwealth*, 279 Va. 210, 217 (2010) (quoting *West v. Commonwealth*, 43 Va. App. 327, 337 (2004)). "Specificity and timeliness undergird the contemporaneous-objection rule [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Consistent with those principles, it is well-settled that an appellate court "will not consider a defendant's 'assignments of error alleging that improper remarks were made by the prosecutor'" unless he timely moved for a cautionary instruction or a mistrial. *Maxwell v. Commonwealth*, 287 Va. 258, 267 (2014) (quoting *Schmitt v. Commonwealth*, 262 Va. 127, 148 (2001)). Thus, the Supreme Court has refused to consider an assignment of error addressing a prosecutor's allegedly improper closing argument when the defendant "did not make a request for a curative instruction or a mistrial" before the jury retired. *Schmitt*, 262 Va. at 148. Likewise, "[t]o be timely, an objection to the admissibility of evidence must be made when the occasion arises—that is, when the evidence is offered, the statement made or the ruling given." *Johnson v. Commonwealth*, 58 Va. App. 625,

---

appellant's assignments of error were thus barred from appellate review by Rule 5A:18. At oral argument, counsel for appellant maintained that "the appeal wasn't frivolous," but conceded that after "trying to find a way out" of the arguments presented in the Commonwealth's brief, he could not "in good faith, and ethically . . . argue against anything [the Commonwealth] wrote. It's all well-grounded." This Court acknowledges and appreciates the candor displayed by appellant's counsel at oral argument.

638 (2011) (quoting *Zook v. Commonwealth*, 31 Va. App. 560, 568 (2000)).  Any challenge to the admissibility of evidence that is raised for the first time in a post-trial motion to set aside the verdict is untimely and waives the issue for appellate review.  *Boblett v. Commonwealth*, 10 Va. App. 640, 651 (1990).

Appellant did not object to Jay's sentencing testimony or the Commonwealth's allegedly improper closing sentencing argument before the jury.  Nor did he request the trial court to issue a cautionary instruction or declare a mistrial.  To the contrary, he waited until after the trial court had entered its final sentencing order to object to the testimony and argument in a motion to set aside the jury's sentence.  Appellant's untimely motion was insufficient to satisfy Rule 5A:18.  *Cf. Bethea*, 297 Va. at 743 ("Untimely objections are generally waived.").  Although there are exceptions to Rule 5A:18, appellant does not invoke them, and the Court will not apply the exceptions *sua sponte*.  *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (*en banc*).  Thus, Rule 5A:18 bars our consideration of appellant's arguments regarding his first two assignments of error.

B.  Sentencing Discretion

In his remaining assignments of error, appellant argues that the trial court abused its sentencing discretion by imposing the jury's recommended sentences.  He maintains that given Jay's prejudicial testimony and the Commonwealth's improper argument, the court should not have imposed fifteen years of active incarceration.

For the same reasons discussed in the preceding subsection of this opinion, we do not reach the merits of appellant's arguments respecting the trial court's sentencing ruling.  Counsel for appellant did not object either to Jay's sentencing testimony or to the Commonwealth's closing sentencing argument, which form the bases for appellant's arguments; accordingly, by operation of Rule 5A:18, appellant failed to preserve for appeal any arguments arising from the alleged impropriety of that testimony and argument.

## III.  CONCLUSION

Appellant failed to preserve for appellate review the arguments now presented to this Court.  Consequently, we affirm the trial court's judgment.

*Affirmed*.