## Richmond

EPOCH TACOMA HIGGINBOTHAM v. COMMONWEALTH OF VIRGINIA.

October 10, 1975.

Record No. 741120.

Present, All the Justices.

*William P. Harris,* for plaintiff in error.

*Alan Katz, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

Epoch Tacoma Higginbotham (defendant or Higginbotham) was tried and convicted by a jury of robbery and first degree murder and his punishment was fixed at a total of 40 years confinement in the state penitentiary. Sentences were pronounced by the trial court on these verdicts. We granted a writ of error to review the defendant's claim that the evidence adduced at trial is insufficient to sustain his convictions.

Frederick Allen Sechrest, Jr. (Sechrest), who was employed at Little Joe's Mini Market (Little Joe's) in Amherst County, was

robbed and murdered at his place of employment on the afternoon of January 1, 1974. The Commonwealth's evidence against the defendant was wholly circumstantial.

Kenneth B. Waller (Waller), who subsequently discovered Sechrest's body, saw Sechrest standing near some "drink boxes" outside Little Joe's between 4:18 and 4:20 p.m. as Waller drove by the store. He blew his horn and "waved at [Sechrest]" who "waved back." There were no cars in Little Joe's lot at that time. Waller drove his car into the parking lot of a shopping center "almost directly across" the highway from Little Joe's. He entered a store in the shopping center where he remained for "probably five minutes." Reentering his car, Waller drove to the highway where he stopped and waited for "a couple of cars to go by." He then drove across the highway and entered Little Joe's lot. A blue Chevrolet owned by Randolph Thomas (Thomas) entered the lot at approximately the same time Waller arrived there. Upon his arrival, Waller observed only one parked car, a "brownish-tan Dodge", in the lot. As Waller "pulled up and stopped", a man that Waller could not identify, "came out of the store and went by [Waller's] car."

Waller and Thomas entered the store together. Waller testified: "When I got in the store I didn't see anybody, so I walked about halfway down the aisle in front of the door. I didn't see anybody at the back so I came back up the front. Then I saw the cash register opened and looked over [the counter] and saw [Sechrest] laying in the floor." Waller further testified: "He was laying face down and blood was coming out of his back." Waller "glanced" at the open cash register and saw "nothing but change." He then used the store telephone to report to the sheriff's office what he had discovered. Waller and Thomas remained at the store until the arrival of a deputy sheriff a short time later.

Deputy Sheriff B. W. Bailess testified that he arrived at Little Joe's at 4:33 p.m. in response to a radio call from the sheriff's dispatcher at 4:30 p.m. When he entered the store Deputy Bailess found Waller, Thomas and two other men waiting there. Bailess did not see Sechrest's body until he was told to look behind the counter. He looked at the body, which was lying face down behind the cashier's counter near the front of the store, and observed two gunshot wounds, one of which was "about the head" and the other "in the back—upper part of the back, down below the neck." Bailess testified that he noticed that the drawer of the cash register was open. His testimony shows that the store had only one usable entrance.

Henry Brockman, another deputy sheriff who participated in the investigation, testified that there was only one usable entrance to the store and that the other doors were "fixed" so that they could not be opened and that the store windows were "secured" by the use of screens and bars. Brockman participated in the defendant's arrest "after midnight" on January 2 at the defendant's apartment in nearby Lynchburg. He testified that he did not "find a gun", although he was looking for one, either on the defendant's person or in his apartment.

Don Wayne Doyle testified that he had worked at the store from 8:00 a.m. until he was relieved by the victim. Around 3:00 p.m. Doyle had ascertained that the cash register contained several checks, $720 in bills and an undetermined amount in coin. When Doyle left Little Joe's at 4:10 p.m., the victim and three lady customers were in the store. As Doyle drove away from the store, he observed that only one car remained in the parking area.

Allen Theodore King testified that on the afternoon of January 1 he was riding with the defendant in the latter's automobile in the vicinity of Little Joe's Mini Mart. They first "went past" the store, then "turned around and went back . . . to buy some wine." Higginbotham parked the car, a "beige-yellow" Dodge, with the front "pointed opposite to" the highway. There were no other cars in Little Joe's lot when King and the defendant arrived "right around 4:00 o'clock or 4:30." The defendant entered the store while King remained in the car and listened to the radio. Higginbotham came out of the store in "approximately a minute or so" carrying a bottle of wine. King testified that the defendant told him that "he was going to get right, . . . threw [the wine] in the car and told me to turn the car around."

While King was turning the car, Higginbotham again entered Little Joe's where he remained for "about a minute or so." When the Waller and Thomas cars entered the lot, the defendant came out of the store, got into his car and said to King, "let's go." King then drove the car from Little Joe's to the defendant's home in Lynchburg. Asked if he heard "any noise" while the defendant was in the store, King responded: "No sir, I was listening to the radio while [Higginbotham] was in the store." When asked about the elapsed time between his arrival at Little Joe's and his departure from there, King answered: "I couldn't say exactly. Maybe three, four or five minutes."

James E. Moss, the owner of Little Joe's, arrived at the store around 4:40 p.m. Moss testified that the only currency in the cash register was "eight or nine" twenty dollar bills which were concealed by "some checks" in a compartment of the cash drawer. Moss testified that the store had only one usable entrance and that the windows were barred.

The foregoing constituted the Commonwealth's evidence. In his own behalf, the defendant testified that he went into Little Joe's on the afternoon of January 1. Upon entering the store through the door on the "right side," he glanced toward the cashier's counter on the "left side" and did not see anyone there. He then went to "a refrigerator back on the right hand side" where he got a bottle of wine. He then related: "I didn't see anyone, so I came back out and I told King, 'I'm going to get some Ripple.' So I went back to get a bottle of Ripple, but they didn't have any Ripple. So I came back out." The defendant denied seeing Sechrest, the victim, while he was in the store. He testified that one car, a red Ford, was in the lot at the time he arrived and that the car was still there when he left. Higginbotham stated that his first trip into Little Joe's took "less than a minute" and that he met Thomas and Waller entering the store as he was "coming out" on the second occasion.

The defendant contends that this evidence is wholly circumstantial and is insufficient to support his convictions. He argues that: (1) There is no unbroken chain of circumstances which connected him with the crimes; (2) that these facts give rise to reasonable hypotheses other than that of the defendant's guilt; and (3) that the evidence shows no more than mere presence of the defendant at the scene of the crimes at about the time they were committed.

Where the sufficiency of the evidence is challenged after conviction, it is our duty to consider it in the light most favorable to the Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it. Code § 8-491; *Boykins* v. *Commonwealth*, 210 Va. 309, 311, 170 S.E.2d 771, 773 (1969).

The principles to be followed in weighing circumstantial evidence are succinctly stated in *LaPrade* v. *Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950), where we said:

"[I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reason-

able doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty. Yet what inferences are to be drawn from proved facts is within the province of the jury and not the court so long as the inferences are reasonable and justified."

The burden, of course, is upon the Commonwealth to prove beyond a reasonable doubt that the accused was the perpetrator of the crime. The Commonwealth's evidence, however, need not affirmatively disprove all theories which might negate the conclusion that the defendant killed and robbed the deceased, but the conviction will be sustained if the evidence excludes every reasonable hypothesis of innocence. *Payne* v. *Commonwealth*, 216 Va. 265, 272, 217 S.E.2d 870, 875 (1975); *Orange* v. *Commonwealth*, 191 Va. 423, 434, 61 S.E.2d 267, 271 (1950).

Viewing the record with these principles in mind, we find the evidence sufficient to sustain the convictions. On the day in question, Sechrest was last seen alive between 4:18 and 4:20 p.m. At that time, he was outside the store, there were no vehicles on the parking lot, and Waller, who then observed Sechrest, "didn't see anybody in the store."

Although obviously familiar with Little Joe's, the defendant first drove past the store, then "turned around and went back" and entered the parking lot. Despite the defendant's claim that a "red Ford" was already parked on the lot, the Commonwealth's evidence established that no other vehicles were present when the defendant arrived.

Sechrest was alive, as the trial judge observed at one stage of the trial, "within minutes . . . maybe even seconds" before the defendant's arrival. Upon entering Little Joe's, the defendant did not see "anybody in the store at all." He then stole a bottle of wine, returned to his car, and told his companion, King, that he was "going to get right." Although the vehicle was his and he had driven it to the store, the defendant directed King to turn it around and head it toward the highway.

As King proceeded to turn the car around, the defendant reentered the store, remained a "minute or so," returned to the car, and ordered King, "let's go." In that "minute or so," Waller and Thomas had arrived on the scene in separate cars. As they entered the store "together," the defendant was "coming out." Once inside, Waller and Thomas discovered the rifled cash register and the still-bleeding body of Sechrest. The police were notified, and at 4:30 p.m. a radio call was broadcast concerning the crimes. Thus, at most, only 12 minutes had elapsed from the time Sechrest was last seen alive until the call was broadcast.

From the evidence, there emerges an unbroken chain of circumstances from which the jury could properly find, beyond a reasonable doubt, that the defendant was the perpetrator of the crimes. The jury could reasonably infer and conclude that when Sechrest was last seen alive, outside the store, between 4:18 and 4:20 p.m. he was the only person then on the premises; that immediately thereafter the defendant, after first "casing" the area, drove onto the deserted parking lot; that, meantime, Sechrest had gone inside the store; that the defendant entered the store, saw neither Sechrest nor anyone else, and stole a bottle of wine; that he returned to his car and, in haste, threw the bottle into the vehicle; that he directed King to turn the car around so a quick "getaway" could be effected; and that he re-entered the store intending to commit further acts of larceny, then encountered Sechrest, murdered him, and rifled the cash register.

The judgment of the trial court will be affirmed.

*Affirmed.*