COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Fitzpatrick, Judges Benton and Clements
Argued at Alexandria, Virginia


KENNETH FRANKLIN EDWARDS

MEMORANDUM OPINION[*] BY
v.        Record No. 1960-02-4        JUDGE JAMES W. BENTON, JR.
                                      JANUARY 28, 2004
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF ALEXANDRIA
John E. Kloch, Judge

Paul E. Pepper, Senior Assistant Public Defender, for appellant.

Amy L. Marshall, Assistant Attorney General (Jerry W. Kilgore,
Attorney General, on brief), for appellee.


The issue raised by this appeal is whether the evidence proved beyond a reasonable doubt

that Kenneth Franklin Edwards carried a concealed weapon in violation of Code § 18.2-308.  We

hold that it did.

I.

The evidence proved that Edwards lived in a building, which contained four apartments on

the second level and has one entrance hallway from the street level to the second level.  Richard

Rouse lived in an apartment adjacent to Edwards.  On December 30, 2000, Edwards's roommate

moved into Rouse's apartment and later expressed anger because Edwards moved her furniture into

the hallway.

Before midnight the following day, Edwards joined his friends at a bar and restaurant near

his apartment.  Edwards testified that Embry Young, who often visited Rouse's apartment, rudely

approached him to discuss the conflict Edwards had with Edwards's former roommate.  Edwards

---
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

testified that when he told Young the conflict did not concern him, Young threatened to "slash [Edwards's] throat and throw [him] out the window of the bar." Edwards testified he rejoined his friends, had another drink, and left the bar to watch fireworks.

Young testified that he was intoxicated that evening and could not remember everything he said to Edwards but he recalled saying something to Edwards "about [being] a little rude about throwing [the roommate's] stuff out in the hallway." After his conversation with Edwards, Young went to another bar and continued to drink until the employees of this bar asked Young to leave. Rouse, who was in the bar, testified that he left the bar with Young. As Rouse and Young walked toward Rouse's apartment, Rouse saw Edwards coming toward them. Rouse testified that Edwards said, "'you still want to cut my throat?'" and then "squared off" in front of Young. Rouse testified that "Young . . . got in a defensive posture himself." Rouse further testified that Edwards began "raving . . . 'do you still want to cut my throat,'" drew a knife from his side near his belt, and quickly stabbed Young. Edwards then walked away.

Young testified he was so intoxicated that he did not remember having a fight with Edwards. He only recalled feeling as if he received a punch in the stomach and realizing his jacket was bloody when Edwards backed away.

Richard Janet, who was with Edwards after the fireworks ended and before the stabbing, recalled that the weather was cold that evening and Edwards was wearing a jacket. Janet testified that Edwards wore a dagger on the right side in a sheath, which was visible when "the jacket was loose . . . [but], if you're just walking down the street, not really looking, you wouldn't have seen [the knife]."

After receiving a report of the stabbing, Officer Steven Escobar went to the apartment building where Edwards and Rouse lived and he spoke to Rouse. While standing in the hallway and talking to several residents of the apartments, Officer Escobar saw Edwards running up the stairs of

the apartment building. When Edwards identified himself, Officer Escobar asked Edwards to put his hands on the wall. Officer Escobar testified that he frisked Edwards after Edwards removed his jacket. He testified that he found the knife in Edwards's right front pants pocket. When asked if Edwards gave him the knife, the officer testified, "I don't believe so, no."

Another resident of the apartment testified that Edwards removed his jacket after the officer asked Edwards if he had a weapon. She testified that Edwards "pulled the knife out and handed it to the officer." Rouse testified that he was "pretty sure [Edwards] gave the officer the knife."

Edwards testified that he was returning alone to a bar after the fireworks when he saw Rouse and Young walking toward him. Edwards testified that he said to Rouse, "you need to do something about your friend, . . . he's over here threatening me and he comes up to your apartment all the time and we can't have this." Edwards testified that Young angrily came toward him, that he pushed Young away, and that he noticed Young coming toward him again. Edwards testified that he obtained his knife in "a natural reflex" because he thought Young intended to fulfill the earlier threat to "slash his throat." When the knife went into Young's body, he pulled it out right away and went to have "a few drinks." He testified that the events that occurred when he later returned to his apartment were "kind of fuzzy."

The trial judge convicted Edwards of unlawful wounding in violation of Code § 18.2-51 and carrying a concealed weapon in violation of Code § 18.2-308.2. While this appeal was pending, the trial judge entered an order *nunc pro tunc*, correcting the final order to reflect a conviction for a concealed weapon in violation of Code § 18.2-308(A).

II.

In pertinent part, Code § 18.2-308(A) provides as follows:

> If any person carries about his person, hidden from common observation . . . any dirk, bowie knife, switchblade knife, ballistic knife, razor, slingshot, spring stick, metal knucks, or blackjack . . . he shall be guilty of a Class 1 misdemeanor.

"We have previously [held] that a weapon is hidden from common view under Code § 18.2-308(A) when it is 'hidden from all except those with an unusual or exceptional opportunity to view it.'" Winston v. Commonwealth, 26 Va. App. 746, 756, 497 S.E.2d 141, 146 (1998) (quoting Main v. Commonwealth, 20 Va. App. 370, 372-73, 457 S.E.2d 400, 402 (1995) (en banc)).

Viewed in the light most favorable to the Commonwealth, Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975), the evidence proved Edwards had a six-inch dagger on his "right side in the sheath" shortly before he encountered Young and Rouse on the sidewalk. Janet testified that Edwards's "shirt covered it" and that Edwards was also wearing a jacket. He further testified as follows:

Q: It was cold out that night, wasn't it?

A: It was cold.

Q: But the belt, the knife was attached to his belt?

A: Yes.

Q: But you could see it under the jacket?

A: The jacket was loose, you could see it. If you looked, you know, if you're just walking down the street, not really looking, you wouldn't have seen it.

\* \* \* \* \* \* \*

Q: You've seen it before?

A: Yes, he carried it with him for quite a few months.

Q: Regularly in that same spot there?

A: Yes sir. Either there or in the jeans pocket.

Q: So but for the jacket, as when you were walking, being open, it's safe to say that it would be not visible, is that right?

A: That's certainly the point. If it was like way up here, you wouldn't be able to see it. But normally he wore it like right there.

- 4 -

Q: . . . To understand your testimony, one thing you said was that the jacket was open at some point when you saw it.

A: Yes.

Q: The jacket, having been zipped up in the cold, you wouldn't be able to see it, is that right?

A: That's true.

Rouse testified that when Edwards and Young faced each other, Edwards "went into his side" in the area near his belt, "drew a knife and stabbed [Young]."

From this evidence, the trial judge could have concluded beyond a reasonable doubt that Edwards was carrying the dagger in a concealed position when he left Janet and approached Rouse and Young. In addition, the officer's testimony was sufficient to prove Edwards had concealed the dagger before he entered the hallway of the apartment building. He saw Edwards come inside the entrance hallway and described the events as follows:

A: He was running up the stairs. I stopped him . . . . I asked him if he was Kenneth Edwards. He said that he was. I asked him to put his hands on the wall. I moved down. I located a weapon, a knife in his right front pocket. I removed the knife, took it into custody. I took Mr. Edwards into custody.

Q: You say that you located the knife on him. He did not hand the knife to you?

A: I don't believe so, no.

Q: Do you ever remember him taking his coat off or anything to hand you a weapon?

A: He did remove his jacket, yet.

Q: Was that so you could pat him down?

A: Yes.

Q: When you say a pocket, do you mean like a pants pocket of -- when you say right front pocket, you mean like a pants pocket?

A: Yes.

The testimony of Rouse and the other resident conflict in part with the officer's testimony because they testified that Edwards gave the dagger to the officer. Neither of these witnesses, however, identified the place from which Edwards retrieved the dagger. In view of Janet's testimony that Edwards sometimes carried the dagger in his pants pocket, the trial judge could have found that the officer's testimony that the dagger was in Edwards's pants pocket was credible. See Walton v. Commonwealth, 255 Va. 422, 426, 497 S.E.2d 869, 871 (1998) (noting that we must give great deference to the fact finder's ability to assess credibility and weigh testimony).

Although, as Edwards argues, Code § 18.2-308(B) exempts from the coverage of Code § 18.2-308(A) "any person while in his own place of abode or the curtilage thereof," the trial judge could have reasonably concluded that the officer saw Edwards when he came from the public street into the hallway. Thus, the trial judge could infer that the dagger, which was concealed when the officer searched Edwards, was likewise concealed before Edwards entered the building.

For these reasons, we affirm the conviction for carrying a concealed weapon in violation of Code § 18.2-308(A).

Affirmed.