COURT OF APPEALS OF VIRGINIA


Present:   Judges Clements, Haley and Senior Judge Overton
Argued at Richmond, Virginia


KENNETH LEROY DAMERON
                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1118-05-2                 JUDGE NELSON T. OVERTON
                                                         MAY 9, 2006
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHARLES CITY COUNTY
Thomas B. Hoover, Judge

Jean M. McKeen (Fitzgerald, Tomlin & McKeen, PLLC, on brief),
for appellant.

Eugene Murphy, Senior Assistant Attorney General (Robert F.
McDonnell, Attorney General, on brief), for appellee.


Kenneth Leroy Dameron challenges his conviction for driving after being adjudicated an

habitual offender in violation of Code § 46.2-357.  He contends (i) the evidence was insufficient

to prove that he drove after a 10:00 p.m. restriction the general district court placed on his

license, and (ii) the general district court order did not restrict his travel to and from Poplar

Springs Hospital to travel for health care services and, thus, the trial court erred in finding he

drove in excess of the restrictions on his license.  We affirm the judgment of the trial court that

Dameron exceeded the 10:00 p.m. time restriction, and we need not address the second question

he presents.

I.  BACKGROUND

Our standard of review is well established.  "Where the sufficiency of the evidence is

challenged after conviction, it is our duty to consider it in the light most favorable to the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Commonwealth and give it all reasonable inferences fairly deducible therefrom. We should affirm the judgment unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).

Dameron was adjudicated an habitual offender in 1985, and his driving privileges were suspended for ten years. In August 2003, Dameron's petition to restore his driving privileges was granted. The general district court extended Dameron's driving privileges in February 2004 and again in June 2004, allowing him to travel to and from Poplar Springs Hospital in Petersburg between the hours of 7:00 p.m. and 10:00 p.m.

On August 17, 2004, at about 10:00 p.m., the date of this offense, Dameron was driving from Poplar Springs Hospital with a friend. Virginia State Police Trooper Ronald Grammer observed Dameron's vehicle had a broken taillight, so he followed Dameron and signaled for him to stop. After signaling, Grammer followed Dameron for forty-five seconds to about one minute to find a safe place to pull over. Both vehicles stopped on Route 5 near the Westover Parish Church.

When Grammer approached the vehicle, Dameron "immediately jumped out of the driver's door." Grammer was startled. He told Dameron, "let me see your hands," and instructed him to not "jump out of a vehicle like that." Grammer informed Dameron why he stopped Dameron, and Grammer "detected a slight odor of an alcoholic beverage coming from [Dameron's] person." When Grammer asked how much he had to drink, Dameron replied he had one beer at about 2:00 p.m. Grammer administered several field sobriety tests, which Dameron passed.

When Grammer asked Dameron for his driver's license, Dameron stated he did not have it in his possession. He explained to Grammer that he was coming from Poplar Springs Hospital,

where he had been visiting his passenger's daughter. The passenger had been driving, but Dameron drove when she became upset after becoming lost.

Grammer informed Dameron he was going to issue him a summons for defective equipment. When Grammer checked Dameron's license with the dispatcher, he discovered Dameron had been adjudicated an habitual offender with two previous convictions. Grammer issued the summons, and placed Dameron under arrest. Grammer noted the time he issued the summons at 10:10 p.m.[1]

When testifying at the general district court, Grammer stated he could have conducted the stop at "10:00 o'clock, or maybe a couple of minutes before." However, at trial, Grammer testified, "[A]t 10:04 p.m., I was on routine patrol on Route 5 in Charles City County when I got in behind a red Ford passenger vehicle . . . ." Later, the Commonwealth asked Grammer:

> [COMMONWEALTH]: Okay. There's some question about the time that you stopped him. Did you -- in the course of making this stop, what did you do that evening about contacting your dispatcher, if anything?
>
> [GRAMMER]: It's the policy of the Virginia State Police, anytime you get out of your vehicle on a traffic stop, you mark out with the dispatcher.
>
> The dispatch office has a CAD System, which is a Computer Aided Dispatch System. Once you key your mic[rophone], your unit number and the time is marked on the computer on tape of the time of the stop.

The Commonwealth introduced a copy of the CAD System report, and Grammer testified the time of the call was "when I contacted the dispatcher that I was making a traffic stop with Mr. Dameron," at 10:04 p.m. Dameron testified the stop occurred at about 9:45 or 9:50 p.m. and that he was aware of the time because of the 10:00 p.m. restriction.

---

[1] The summons was not introduced into evidence.

## II. ANALYSIS

Code § 46.2-357(A) provides, in relevant part:

> It shall be unlawful for any person determined or adjudicated an
> habitual offender to drive any motor vehicle . . . on the highways
> of the Commonwealth while the revocation of the person's driving
> privilege remains in effect.

The trial judge found that Dameron violated the statute by exceeding both restrictions on his license: driving after 10:00 p.m. and driving for an unauthorized purpose, i.e., a social visit at the hospital. Dameron asserts that because Grammer testified the stop lasted approximately twenty minutes, and because he wrote "10:10 p.m." as the time he issued Dameron the summons, the Commonwealth failed to exclude the reasonable hypothesis the stop occurred prior to 10:00 p.m.

It is well established that "[c]ircumstantial evidence is competent and is entitled to as much weight as direct evidence provided that the circumstantial evidence is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441 (2000). Equally well established is that when prosecuting a case based solely on circumstantial evidence, the Commonwealth must exclude all reasonable hypotheses of innocence that flow from the evidence. Id.

However, the standard articulated in Dowden and other cases applies to those instances when the proof is "solely circumstantial." Id.; see also Dukes v. Commonwealth, 227 Va. 119, 122, 313 S.E.2d 382, 383 (1984); Rice v. Commonwealth, 16 Va. App. 370, 372, 429 S.E.2d 879, 880 (1993). Contrary to Dameron's assertion, Grammer's testimony constituted direct, not circumstantial evidence of the time of the stop. As Grammer testified, he remembered making the 10:04 p.m. call "when I contacted the dispatcher that I was making a traffic stop with Mr. Dameron." As a result, the six-minute interval between the stop and the time Grammer issued the summons did not create a reasonable doubt as to the time of the stop. The trial judge, sitting

- 4 -

as fact finder, resolved any inconsistencies regarding the time written on the summons and the length of the stop in favor of the Commonwealth.  <u>Higginbotham</u>, 216 Va. at 352, 218 S.E.2d at 537.

Because we affirm the decision based on Dameron's exceeding the 10:00 p.m. restriction, we need not address whether he violated his travel restriction by going to the hospital for a social visit.  Accordingly, we affirm the judgment of the trial court.

<u>Affirmed.</u>