COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, AtLee and Athey
Argued at Lexington, Virginia

PUBLISHED

CARLOS ARTUR ALVAREZ SAUCEDO

OPINION BY
v.      Record No. 1440-18-3                        JUDGE MARY GRACE O'BRIEN
OCTOBER 29, 2019

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Thomas J. Wilson, IV, Judge

Louis Kirk Nagy (The Law Office of Louis K. Nagy, PLC, on briefs),
for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R. Herring,
Attorney General; Rachel L. Yates, Assistant Attorney General, on brief),
for appellee.


A jury convicted Carlos Artur Alvarez Saucedo ("appellant") of sodomizing a child under

the age of thirteen, in violation of Code § 18.2-67.1(A)(1).  The court imposed the jury sentence,

eleven years of incarceration, with an additional forty years suspended, pursuant to Code

§ 18.2-67.1(B)(2).  Appellant contends that the court erred in denying a pretrial motion to suppress

statements he made to a detective.  He also asserts that the court erred by admitting the complaining

witness' prior statements at trial and denying his motion to set aside the verdict based on insufficient

evidence.  For the following reasons, we affirm appellant's conviction.

BACKGROUND

G.G., the complaining witness, is appellant's stepdaughter.  In 2013, when G.G. was in first

grade, she told a school counselor that appellant had touched her vagina.  However, when a social

worker and police officer interviewed the child, she recanted her statement.

In 2017, when she was ten years old, G.G. attended a presentation at her elementary school about inappropriate touching. Afterwards, G.G. told Carlita Sheldon, a Child Protective Services employee, that when she was four or five years old, appellant laid on the bed where she was sleeping and licked her vagina. G.G. also said that appellant was drunk at the time. Sheldon obtained permission from G.G.'s mother to take G.G to the Collins Child Advocacy Center for a forensic interview. Rhoda Miller, a Collins Center employee, conducted the interview, which was videotaped.

On April 19, 2017, Detective Mike Spiggle of the Harrisonburg Police Department interviewed appellant at the police station. Appellant was not in custody. Carlita Sheldon, who is fluent in Spanish, interpreted for appellant during the interview. Appellant denied the allegations and left.

Appellant agreed to return to the station on April 24, 2017 for a polygraph examination. Upon appellant's arrival, Detective Spiggle and another interpreter, Ramon Ochoa, escorted appellant to the polygraph suite, demonstrated that the door was unlocked, and assured appellant that he was free to leave at any time. Appellant was not handcuffed, and he sat in the chair closest to the door. Detective Spiggle and Ochoa were the only other people in the room.

Detective Spiggle explained that he was investigating appellant for sodomizing a child. He remarked that if appellant touched G.G.'s vagina with his tongue, he "needed to get up and walk out of the room now." Appellant continued to speak with the detective and eventually stated that he "had been drinking that night and he mistook or . . . confused [G.G.] for his wife." When asked if he recalled touching G.G.'s vagina with his tongue, appellant replied, "[P]robably, yes," and added, "I'm sure myself I will never do that again." Detective Spiggle left the room, and appellant wrote a statement.

After reviewing the statement with a prosecutor, Detective Spiggle requested more details from appellant. Appellant wrote a second statement in which he admitted that he touched G.G. with his hands and "maybe . . . touch[ed] her with [his] tongue." Detective Spiggle placed appellant under arrest at that time.

Prior to trial, appellant moved to suppress his oral and written statements to Detective Spiggle. Although appellant acknowledged that he was not in custody during his initial interview on April 19, 2017, he contended that on April 24, 2017, when Detective Spiggle told him that if he touched G.G. with his tongue he should "get up and walk out," the interview became custodial and the police were required to advise him of his rights under Miranda v. Arizona, 384 U.S. 436 (1966). The court viewed the videotaped interview from April 24, 2017, and observed that "during the entire interview . . . [appellant] appeared to be sitting in a relaxed manner." It found, after considering all the circumstances, that appellant was not in custody and denied the suppression motion.

Pursuant to Code § 19.2-268.3, the Commonwealth filed a pretrial motion to admit three of G.G.'s prior statements: the 2013 report to a school counselor, the 2017 disclosure to Carlita Sheldon, and the 2017 forensic interview with Rhoda Miller at the Collins Center. Appellant agreed that the statements could be admissible but argued that G.G. would have to testify first. The court found that the "totality of the circumstances surrounding each of the three statements provided sufficient indicia of reliability so as to render them inherently trustworthy" and therefore they were admissible under the hearsay exception contained in Code § 19.2-268.3.

At trial, G.G. testified that when she was five years old, she woke one night to find appellant lying on her bed. She stated that appellant pulled her pants down and touched her vagina with his tongue and hands for several seconds. On cross-examination, G.G. acknowledged that she did not

know the meaning of "labia majora" or "vulva," but she explained that when she stated appellant had put his tongue on her vagina, she meant her "private area."

G.G. testified that she initially reported the abuse when she was in first grade and told another adult when she was in fourth grade. She stated that she did not remember the Collins Center interview but recalled "going to a place where [she] sat in a blue chair to talk with a video." Miller identified the videotaped interview at trial, and over objection, the Commonwealth played the video for the jury. In the interview, G.G. described the offense, gestured to a picture of a vagina on the table, and said that during the incident, she felt appellant "opening" her "two parts" and "lick[ing] around all of [her] vagina."

During closing argument, appellant argued that G.G. was not credible because her testimony was "all over the place" and she did not "remember anything" about the forensic interview although it only occurred approximately one year before trial. The jury found appellant guilty of forcible sodomy, and he subsequently filed a motion to set aside the verdict. The court denied his motion.

ANALYSIS

A. Suppression Motion

Appellant contends that the court erred by denying the motion to suppress his April 24, 2017 statements to Detective Spiggle. He argues that the statements were obtained in violation of his Fifth Amendment rights under the United States Constitution because Detective Spiggle failed to advise him of his Miranda rights before conducting a custodial interrogation.

"When considering whether to affirm the denial of a pretrial suppression motion, an appellate court reviews not only the evidence presented at the pretrial hearing but also the evidence later presented at trial." Tirado v. Commonwealth, 296 Va. 15, 24-25 (2018) (quoting Commonwealth v. White, 293 Va. 411, 414 (2017)). "Although '[w]e are bound by the trial court's findings of historical fact unless "plainly wrong," or without evidence to support them,' . . . we

- 4 -

review *de novo* the trial court's application of legal standards . . . to the particular facts of the case." Aldridge v. Commonwealth, 44 Va. App. 618, 638 (2004) (quoting McCracken v. Commonwealth, 39 Va. App. 254, 258 (2002) (*en banc*)). An appellate court views the evidence in the light most favorable to the Commonwealth and "accord[s] the Commonwealth the benefit of all inferences fairly deducible from the evidence." Riner v. Commonwealth, 268 Va. 296, 303 (2004).

The Fifth Amendment to the United States Constitution provides that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.[1] To safeguard this right, police must advise criminal suspects of their right against self-incrimination prior to subjecting them to custodial interrogations. Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). However, this requirement does not extend to non-custodial interrogations; the suspect must be "both in custody and subjected to interrogation" before police must provide Miranda warnings. Watts v. Commonwealth, 38 Va. App. 206, 214 (2002).

To evaluate whether a suspect is in custody, the proper inquiry is "how a reasonable person in the suspect's situation would have understood his circumstances." Dixon v. Commonwealth, 270 Va. 34, 40 (2005). Relevant circumstances include

> whether the suspect was physically restrained, whether firearms were drawn, whether there was physical contact between police and the suspect, . . . whether police told the suspect he or she was free to leave, whether police engaged in other incidents of formal arrest such as booking [and] whether more than one officer was present.

Hasan v. Commonwealth, 276 Va. 674, 679-80 (2008). The "officers' demeanor during the encounter, the length of the questioning . . . the nature of the questions asked, . . . [and] the location of the encounter" are also important factors for courts to consider when determining if a suspect was subject to custodial interrogation. Id. at 680.

---

[1] The Fifth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment. Malloy v. Hogan, 378 U.S. 1, 6 (1964).

Therefore, the number of officers, the degree of restraint, and the nature of the surroundings may all contribute to a finding that a suspect is in custody. Harris v. Commonwealth, 27 Va. App. 564, 565 (1998). However, "[a]ny interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime." Oregon v. Mathiason, 429 U.S. 492, 493-95 (1977) (finding a defendant was not in custody when he confessed after a police officer falsely told him during a police station interview in a closed room that his fingerprints were found at the crime scene). See also Aldridge, 44 Va. App. at 642-47 (finding no custodial interrogation where the defendant voluntarily agreed to an interview at the police station and was free to leave, the detectives never raised their voices, and the defendant was not handcuffed or physically restrained).

Appellant acknowledges that he voluntarily attended the polygraph examination appointment at the police department on April 24, 2017. However, he argues the interview became custodial due to Detective Spiggle's comment advising appellant to "walk out of the room" if appellant's "tongue touched [G.G.'s] vagina." Appellant contends that this statement constituted a "verbal handcuff [that] invalidated the otherwise consensual nature of the encounter" and rendered the interview a custodial interrogation.

Although appellant analogizes the facts of his case to those of Missouri v. Seibert, 542 U.S. 600 (2004), we find his reliance misplaced. In Seibert, police arrested the defendant, transported her to the police station, and interrogated her without first providing Miranda warnings. Id. at 604-05. She confessed to the crime. Id. at 605. Following her confession, the police advised the defendant of her Miranda rights and questioned her again. Id. The defendant reiterated her confession. Id. The United States Supreme Court found that the interview tactic of "question first, then give the warnings, and then repeat the question 'until . . . get[ting] the answer that [the

defendant] already provided'" violated the Fifth Amendment right against self-incrimination. Id. at 606, 612-17. Unlike Seibert, however, appellant was not under arrest at the time he made his statements and was free to leave.

Further, this case is distinguishable from Seibert because here, the record supports the court's finding that Detective Spiggle's comment did not restrict appellant's freedom "of the degree associated with a formal arrest." California v. Beheler, 463 U.S. 1121, 1125 (1983). Appellant went to the police station voluntarily on April 24, 2017 for the polygraph examination. He was not handcuffed or restrained; on the contrary, Detective Spiggle assured appellant that he could leave at any time and demonstrated that the door to the polygraph suite was not locked. Detective Spiggle was the only law enforcement officer in the room with appellant, and the court noted that appellant appeared "relaxed" throughout the interview. Although appellant may have felt psychological pressure to confess after Detective Spiggle's comment, that alone did not amount to a restraint that rendered the interview a custodial interrogation. See Mathiason, 429 U.S. at 495. For these reasons, the totality of the evidence supports the court's conclusion that appellant was not in custody during the interview on April 24, 2017. Therefore, the court did not err in denying appellant's motion to suppress his statements.

B. G.G.'s Forensic Interview

Appellant contends the court erred by admitting G.G.'s videotaped forensic interview taken at the Collins Center. He asserts that the Commonwealth did not comply with the admissibility requirements for G.G.'s statements in the video to qualify as hearsay exceptions under Code § 19.2-268.3. He also argues that admission of the video despite G.G.'s failure to recollect the interview violated his right to confront an adverse witness under the Sixth Amendment of the United States Constitution. We disagree.

At trial, the court allowed the Commonwealth to play G.G's videotaped interview with Rhoda Miller after G.G. testified. Code § 19.2-268.3(B) establishes a hearsay exception for prior statements by juvenile victims, providing in relevant part as follows:

> An out-of-court statement made by a child who is under 13 years of age at the time of trial or hearing who is the alleged victim of an offense against children describing any act directed against the child relating to such alleged offense shall not be excluded as hearsay under Rule 2:802 of the Rules of the Supreme Court of Virginia if both of the following apply:
>
> 1. The court finds, in a hearing conducted prior to a trial, that the time, content, and totality of circumstances surrounding the statement provide sufficient indicia of reliability so as to render it inherently trustworthy . . . [and]
>
> . . . .
>
> 2. The child:
>
>    a. Testifies; or
>
>    b. Is declared by the court to be unavailable as a witness[.][2]

Following the pretrial hearing, the court found "sufficient indicia of reliability" to allow introduction of the videotaped statement pursuant to Code § 19.2-268.3(B). However, appellant asserts that G.G. did not "testify" as required by the statute because she could not recall the substance of her videotaped statement, and therefore, he was not able to effectively cross-examine her. As a result, he contends, admission of the interview violated his rights under the Confrontation Clause.

"[T]he admissibility of evidence is within the discretion of the trial court and we will not reject the decision of the trial court unless we find an abuse of discretion." Midkiff v.

---

[2] We note that the "out-of-court statement" would include a videotape or audiotape of the statement if otherwise authenticated.

- 8 -

Commonwealth, 280 Va. 216, 219 (2010).  Whether G.G.'s statements are barred by the Confrontation Clause is a question of law that we review *de novo*.  Michels v. Commonwealth, 47 Va. App. 461, 465 (2006).  We also conduct *de novo* review of any issue requiring statutory interpretation.  Ele v. Commonwealth, 70 Va. App. 543, 549 (2019).

The Sixth Amendment of the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.[3]  However, "when the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of his prior testimonial statements."  Crawford v. Washington, 541 U.S. 36, 59 n.9 (2004).  "[T]he Confrontation Clause guarantees only an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."  Abney v. Commonwealth, 51 Va. App. 337, 350 (2008) (quoting United States v. Owens, 484 U.S. 554, 559 (1988)).  See also Delaware v. Fensterer, 474 U.S. 15, 21-22 (1985) (*per curiam)* ("The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion.").

Appellant contends that G.G. did not "testify" as required by Code § 19.2-268.3(B)(2)(a) because she could not recall the forensic interview other than "going to a place where [she] sat in a blue chair to talk with a video."  He argues that although G.G. was under oath and answered questions on both direct and cross-examination about the videotaped statement and her lack of memory, he was deprived of his right to effectively confront G.G. about the content of the interview.

---

[3] The Sixth Amendment is applicable to the states through the Due Process Clause of the Fourteenth Amendment.  Pointer v. Texas, 380 U.S. 400, 403 (1965).

We rejected a similar argument in <u>Campos v. Commonwealth</u>, 67 Va. App. 690 (2017). In <u>Campos</u>, the defendant argued that a victim's prior statement was inadmissible because the child's "faulty memory at trial rendered her *de facto* not present for Sixth Amendment purposes, thereby denying him effective confrontation." <u>Id.</u> at 703. We found the argument "without merit" and noted that "[w]itnesses commonly testify that they do not recall certain details or events." <u>Id.</u> at 703, 704. The mere opportunity to confront a witness about these memory lapses subjects that witness to an attack on his or her credibility. <u>Id.</u> at 704. Because the "credibility attack did not result in an acquittal does not mean that appellant was denied his right of cross-examination." <u>Id.</u> (quoting <u>Massey v. Commonwealth</u>, 67 Va. App. 108, 134 (2016)).

Here, appellant cross-examined G.G about her inability to remember the interview. G.G. admitted that she had no memory except "going to a place where [she] sat in a blue chair to talk with a video." During closing argument, appellant argued that G.G. was not credible because her testimony was "all over the place" and she did not "remember anything" about the forensic interview although it occurred within approximately one year of trial. Appellant's opportunity to question G.G. about her faulty memory and attack her credibility satisfied the Confrontation Clause guarantee of effective cross-examination.

Appellant also argues that the Commonwealth failed to authenticate the interview because G.G. was unable to identify it. "Ordinarily, the admissibility of videotape films is governed by the same rules which apply to the admission of photographs or motion pictures." <u>Stamper v. Commonwealth</u>, 220 Va. 260, 271 (1979). At trial, the Commonwealth offered testimony from Rhoda Miller, who identified the videotaped interview. Miller, the Collins Center employee, testified that she interviewed G.G. and prepared the video of the interview. She told the jury that the video was a "true and accurate copy and depiction of [her] interview" with G.G. This testimony met the requirements for admission into evidence under Virginia Rule of Evidence 2:901, which

provides that "authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the thing in question is what its proponent claims." Accordingly, the court did not err by admitting into evidence G.G.'s forensic interview at the Collins Center.

## C. Sufficiency of the Evidence

Appellant contends that the court erred by denying his motion to set aside the verdict because the Commonwealth did not prove the element of penetration. In reviewing a challenge to the sufficiency of the evidence, we affirm the trial court's judgment "unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Horton v. Commonwealth, 255 Va. 606, 608 (1998) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352 (1975)). We view the evidence in the light most favorable to the Commonwealth as the prevailing party at trial. See id.

Under Code § 18.2-67.1(A)(1), "[a]n accused shall be guilty of forcible sodomy if he or she engages in cunnilingus . . . with a complaining witness" who is less than thirteen years of age. "[P]enetration is an essential element of the crime of sodomy." Ryan v. Commonwealth, 219 Va. 439, 444 (1978). However, the Commonwealth is not required to prove that a defendant penetrated the victim's vagina. Horton, 255 Va. at 613. "[P]enetration of any portion of the vulva is sufficient to prove sodomy by cunnilingus. Penetration of the vaginal opening or vagina is not required." Id. Stated otherwise, "insertion of the defendant's tongue into the victim's vagina need not be shown." Love v. Commonwealth, 18 Va. App. 84, 88 (1994).

Although appellant relies on Moore v. Commonwealth, 254 Va. 184 (1997), and Ashby v. Commonwealth, 208 Va. 443 (1968), neither case involves forcible sodomy by cunnilingus. In Moore, the defendant was charged with rape, in violation of Code § 18.2-61, and the complaining witness testified that the defendant "was rubbing" his penis "on" her vagina. 254 Va. at 185, 188.

The Supreme Court reversed the conviction, finding the evidence insufficient to establish the crime of rape when the defendant's "penis [was] placed *on*, not *in*, the woman's sexual organ." Id. at 189. In Ashby, the defendant's conviction for forcible sodomy by fellatio, in violation of Code § 18.2-67.1(A)(1), was reversed because the only evidence of penetration consisted of the child's statement that he placed his mouth "*on* [the defendant's] privates." 208 Va. at 444. The Court found that there was no evidence that the defendant's penis actually penetrated the victim's mouth, an element of sodomy by fellatio. Id.

Forcible sodomy by cunnilingus, in violation of Code § 18.2-67.1(A)(1), requires "penetration of any portion of the vulva – which encompasses the 'external parts of the female sex organs considered as a whole' and includes, beginning with the outermost parts, the labia majora, labia minora, hymen, vaginal opening and vagina." Love, 18 Va. App. at 88 (quoting 4 J.E. Schmidt, Attorneys' Dictionary of Medicine V-106 (18th ed. 1990)). Thus, penetration of any portion of the vulva, including the labia majora, is sufficient to prove sodomy by cunnilingus. See id. at 89; Horton, 255 Va. at 613.

Here, G.G. testified that appellant touched her vagina with his tongue. Although she admitted that she did not know the meaning of the terms "labia majora" or "vulva," she described the area where appellant touched her as her "private area." During her forensic interview, G.G. stated that appellant "open[ed]" her vagina and "lick[ed] around all of [her] vagina." She also gestured to a picture of a vagina on the table when she was indicating where appellant touched her. Viewed in the light most favorable to the Commonwealth, this evidence proved that appellant penetrated not only G.G.'s vulva, but also specifically her vagina. See Horton, 255 Va. at 614. Therefore, appellant's conviction for forcible sodomy by cunnilingus, in violation of Code § 18.2-67.1(A)(1), was not "plainly wrong or without evidence to support it." Id. (quoting Higginbotham, 216 Va. at 352).

## CONCLUSION

For the foregoing reasons, we affirm the judgment of the trial court.

<u>Affirmed.</u>