# COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present: Judges Atlee, Ortiz and Lorish
Argued at Richmond, Virginia


ROBERT SZABO

MEMORANDUM OPINION[*] BY
v.      Record No. 1196-22-2           JUDGE LISA M. LORISH
FEBRUARY 6, 2024

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
David E. Johnson, Judge

Stephen K. Armstrong (Armstrong Law LLC, on brief), for
appellant.

Amanda L. Lavin, Assistant Attorney General (Jason S. Miyares,
Attorney General; Maria N. Wittmann, Deputy Attorney General;
Susan Barr, Senior Assistant Attorney General, on brief), for
appellee.


Robert Szabo appeals the trial court's judgment finding that he "remains a sexually violent predator" under Code § 37.2-910 and recommitting him to the custody of the Department of Behavioral Health and Developmental Services (DBHDS) for treatment. Szabo argues that the evidence did not support the trial court's conclusion that he is a sexually violent predator. Because we cannot say the trial court's judgment was plainly wrong or without evidence to support it, we affirm.

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

BACKGROUND[1]

In July 2000, Szabo was tried as a juvenile for the sodomy of a six year old. The Chesterfield Juvenile and Domestic Relations District Court adjudicated Szabo delinquent and sentenced him to 12 months in jail with 10 months suspended. In February 2002, the Chesterfield County Circuit Court convicted Szabo of carnal knowledge of a child between the ages of 13 and 15 and sentenced him to 10 years' incarceration with 7 years and 9 months suspended. In March 2006, the trial court revoked and resuspended a portion of Szabo's previously-suspended sentence after finding that he had violated the terms of his probation. In April 2010, Szabo "agreed to be adjudged a sexually violent predator and to be committed to the custody of DBHDS for secure inpatient treatment until such time as [the trial court] may determine that it is safe to release him."

After "carefully examin[ing Szabo] in proper person, under oath," and considering the Commonwealth's proffered summary of evidence it would present at a hearing, the trial court found that Szabo was a sexually violent predator under Code § 37.2-900. Szabo had been diagnosed with antisocial personality disorder, attention deficit/hyperactivity disorder, and anxiety disorder. Szabo also struggled with substance abuse disorders. The combination of those conditions made it "difficult [for him] to control his predatory behavior" and "render[ed] him so likely to commit sexually violent offenses that he constitute[d] a menace to the health and safety of others." Because there was "no suitable less restrictive alternative to involuntary secure inpatient treatment and hospitalization," the trial court committed Szabo to DBHDS for treatment and confinement.

---

[1] When a respondent appeals a trial court's judgment that he is a sexually violent predator, "we view the facts in the light most favorable to the Commonwealth, the prevailing party below." *Shivaee v. Commonwealth*, 270 Va. 112, 127 (2005). "We also accord the Commonwealth the benefit of all inferences fairly deducible from the evidence." *Id.* (citing *Stanley v. Webber*, 260 Va. 90, 95 (2000)).

In March 2013, the trial court found that Szabo remained a sexually violent predator but was eligible for conditional release under Code § 37.2-912, permitting him to receive outpatient treatment, provided he complied with conditional release plans developed by his treatment providers. In 2014, Szabo violated the conditional release plans by using controlled substances, beginning a romantic relationship without reporting it to his probation officer, and failing to attend sex offender treatment sessions. Thus, in March 2015, the trial court revoked Szabo's conditional release and recommitted him to DBHDS for treatment and confinement. In July 2017, the trial court again found that Szabo remained a sexually violent predator but was eligible for conditional release, provided that he complied with the treatment plan developed by his providers. In 2018, he violated that plan by using controlled substances and failing to attend sex offender treatment sessions. In March 2020, the trial court revoked his second conditional release and recommitted him to DBHDS for treatment and confinement.

In November 2021, the trial court held an annual review hearing under Code § 37.2-910 to determine whether Szabo remained a sexually violent predator. The trial court qualified Dr. Mario Dennis, a forensic psychologist at DBHDS, as an expert in the diagnosis, treatment, and risk assessment of sex offenders. Dr. Dennis evaluated Szabo in anticipation of the annual review hearing and submitted his report to the trial court under Code § 37.2-910(B). Dr. Dennis diagnosed Szabo with "other specified paraphilic disorder hebephilia" based on his sexual attraction to people "past the age of puberty, but in the early teens." Dr. Dennis also diagnosed Szabo with antisocial personality disorder, bipolar disorder, four substance abuse disorders, and attention deficit hyperactivity disorder. Dr. Dennis based his diagnoses on Szabo's past criminal behavior and admission that he had engaged in "sexual relations with" some "teenage girls" when he was an adult.

Szabo's antisocial personality disorder manifested in "poor impulse control, aggressive behavior," and "difficulty complying with rules of the law." In addition, Szabo's risk of reoffending would increase if he were under the influence of any controlled substance in "a high risk situation . . . in the context of being around a vulnerable individual." Dr. Dennis was also concerned that Szabo's difficulties with "impulse control and social judgment" would "pose a potential risk to the community" when in the presence of someone to whom he was sexually attracted in that age range.

Since his recommitment to DBHDS, Szabo's treatment had focused on certain "behavioral issues" and his refusal to "accept[] responsibility." Szabo insisted that he was entitled to an individual room given his alleged post-traumatic stress disorder. But Dr. Dennis had not diagnosed Szabo with PTSD and opined that his "single cell entitlement" was a manifestation of his antisocial personality disorder. Szabo also "portrayed himself as a victim" and did not regularly attend his "return from release" treatment group. Dr. Dennis explained that given those circumstances, Szabo only had recently begun treatment to address his disorders. Although Szabo had made "modest progress" in treatment, Dr. Dennis opined that his risk of reoffending remained high.

In the "conclusions and findings" of his 2021 annual review evaluation of Szabo, Dr. Dennis explained that "[t]o be recommended for conditional release," Szabo had to "consistently demonstrate sufficiently sustained changes in the thoughts, beliefs, attitudes, emotions, behaviors and sufficient management of sexual arousal," that would make it reasonable to conclude that, "with continued treatment, the change could be maintained and his risk managed in the community." Considering Szabo's continued "antisocial thinking and problematic behavior and self-regulation," Dr. Dennis stated that the outpatient sex offender treatment program, which is "pitched to low-to-moderate risk offenders," "would not be sufficient to manage his risks or sustain his progress." Dr. Dennis acknowledged that Szabo had not committed any new sexual offenses in about 20 years but explained that not reoffending was a "baseline" and "not sufficient" to

recommend a conditional release. Given Szabo's continued struggles with impulse control and treatment, Dr. Dennis concluded that Szabo remained a sexually violent predator and needed "intensive inpatient treatment."

Dr. Salim Dahlvani, a consultant psychiatrist at DBHDS, testified that he had "seen" Szabo "a few times" and prescribed him certain medications. Dr. Dahlvani's treatment of Szabo was interrupted by Szabo's insistence that he was entitled to a "single room." Dr. Michael Lasher, a clinical psychologist at DBHDS, also treated Szabo for several months and confirmed that his refusal to attend treatment groups had harmed his "progress towards conditional release." Finally, Tonya Epps-Hurt, DBHDS's housing coordinator, consulted Szabo's treating physicians about his request for a "single cell" after his recommitment. Epps-Hurt initially denied Szabo's request for a single room. When Szabo refused to promise not to harm his roommate, however, she assigned him to a single room.

Following Epps-Hurt's testimony, Szabo informed the trial court that he had no more evidence and wished to present argument. After argument by counsel, the trial court found "by clear and convincing evidence that . . . [Szabo] remain[ed] a sexually violent predator" and there was "no suitable less restrictive alternative to involuntary secure inpatient treatment." Accordingly, it recommitted Szabo to DBHDS's custody for treatment. Szabo appeals.

ANALYSIS

Szabo assigns error to the trial court's determination that he remained a sexually violent predator.[2] A "[s]exually violent predator" is "any person who (i) has been convicted of a sexually

---

[2] Szabo also assigned error to the trial court's failure to allow him to address the court at his review hearing, arguing that he has a statutory right to do so under Code § 19.2-268. At oral argument, counsel for Szabo conceded that Szabo never asked for an opportunity to speak at the hearing, or argued he had a statutory right to do so, and that as a result we cannot consider the argument for the first time on appeal. *See* Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the

violent offense . . . ; and (ii) because of a mental abnormality or personality disorder, finds it difficult to control his predatory behavior, which makes him likely to engage in sexually violent acts." Code § 37.2-900. At an annual review hearing, the Commonwealth must prove "by clear and convincing evidence that the respondent remains a sexually violent predator." Code § 37.2-910(C). After finding that "the respondent remains a sexually violent predator," the trial court "shall order that he remain in the custody of the Commissioner [of DBHDS] for secure inpatient hospitalization and treatment or that he be conditionally released." Code § 37.2-910(D).

Generally, at a contested review hearing, the Commonwealth must present expert testimony to meet its burden of demonstrating that a respondent remains a sexually violent predator. *Commonwealth v. Squire*, 278 Va. 746, 752 (2009); *Shivaee v. Commonwealth*, 270 Va. 112, 127-28 (2005). On appeal, however, we defer to the weight a trial court assigns to such expert testimony and will not reverse a trial court's finding that a respondent is or is not a sexually violent predator "unless it is plainly wrong or without evidence to support it." *Squire*, 278 Va. at 749 (citing *Higginbotham v. Commonwealth*, 216 Va. 349, 352 (1975)); *Shivaee*, 270 Va. at 128.

Szabo concedes that Dr. Dennis concluded that he remained a sexually violent predator and needed "intensive inpatient treatment." But Szabo argues Dr. Dennis's conclusions are not "borne out by the record," which demonstrates that he has not committed any new sexual offenses for over 20 years. Thus, Szabo argues the trial court was plainly wrong to consider it.

We disagree and find that there was sufficient supporting evidence for the trial court's judgment. Dr. Dennis diagnosed Szabo with "other specified paraphilic disorder hebephilia," antisocial personality disorder, bipolar disorder, four substance abuse disorders, and attention deficit hyperactivity disorder. For Szabo, that constellation of disorders led to his sexual attraction to

---

time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.").

minors, along with "poor impulse control, aggressive behavior," and "difficulty complying with rules of the law."

Although the record demonstrates that Szabo had not sustained any new convictions in about 20 years, Dr. Dennis explained that not reoffending was merely a "baseline" and was "not sufficient" to eliminate Szabo's designation as a sexually violent predator. Most individuals committed to DBHDS are not in an environment where they have an opportunity to commit a new sexual offense. Because of Szabo's behavioral issues, poor attendance at his treatment groups, and refusal to accept responsibility of his actions, Dr. Dennis determined that Szabo's risk of reoffending remained high. Szabo struggled to dedicate himself to tasks that would demonstrate effective healthy self-regulation, healthy relationships, impulse control, and the ability to live a healthy life in the community, thus Dr. Dennis explained that the designation remained. In fact, Szabo's persistent recalcitrant behavior meant that he had begun treatment for his disorders only recently and had made only "modest progress" since his recommitment. *See Shivaee*, 270 Va. at 127-28 (affirming the trial court's finding that the respondent was a sexually violent predator when two experts testified that because of his mental abnormality, he found it "difficult to control his predatory behavior" and was "likely" to reoffend).

Given Dr. Dennis's testimony, we will not disturb the trial court's finding that Szabo remained a sexually violent predator.

CONCLUSION

For all these reasons, the trial court's judgment is affirmed.

*Affirmed*.